## Commonwealth vs. Moshe Hason.

Suffolk.  March 2, 1982. — August 19, 1982.

Present: Hennessey, C.J., Abrams, Nolan, Lynch, & O'Connor, JJ.

*Search and Seizure.  Probable Cause.  Constitutional Law,* Search and seizure.

At the hearing on a motion by a criminal defendant to suppress from evidence a motor vehicle seized without a warrant on a public street by the police acting on information supplied by an informant who had proved reliable in the past, the Commonwealth met its burden of showing that the police had probable cause to believe that the vehicle had been stolen and, in the circumstances, no warrant was required to effect the seizure.  [172-177]

On appeal of an order allowing a criminal defendant's motion to suppress, this court remanded the case to the Superior Court for findings on the issue whether a computer found during a warrantless search of the trunk of an impounded automobile seized from the defendant was the product of a lawful inventory search.  [177-178]

INDICTMENTS found and returned in the Superior Court Department on January 14, 1981.

A pretrial motion to suppress evidence was heard by *Brogna, J.*

An application for an interlocutory appeal was allowed by *Nolan, J.,* in the Supreme Judicial Court for the county of Suffolk and the appeal was transferred by him to the Appeals Court.

The Supreme Judicial Court ordered direct appellate review on its own initiative.

*Peter Grabler,* Assistant District Attorney (*Timothy M. Burke,* Assistant District Attorney, with him) for the Commonwealth.

*Gerald Alch* for the defendant.

Lynch, J.  On January 14, 1981, the defendant, Moshe Hason, was indicted for violations of G. L. c. 266, §§ 28 and

60 (knowing receipt, possession, and concealment of a stolen motor vehicle and of stolen property valued at more than $100). The defendant filed a motion to suppress the motor vehicle and the home computer which were the basis for the indictments on the ground that they had been improperly seized without a warrant. A judge of the Superior Court allowed the motion. After the Commonwealth's application for an interlocutory appeal was granted, see Mass. R. Crim. P. 15 (b) (2), 378 Mass. 884 (1979), we transferred the case to this court on our own motion. We now reverse the judge's order and remand the case for further proceedings.

The indictments against the defendant and two others were the product of a State police investigation into an automobile theft ring. The trial judge heard motions to suppress evidence made by all three men, and the judge's findings on this defendant's motion incorporated by reference his findings in the other two cases. We review the relevant facts as found by the judge.

The auto theft unit of the State police had been investigating an alleged automobile theft ring for approximately three months prior to November 20, 1980, in reliance upon information supplied by an informant who had given accurate information to the police on three previous occasions. In October, 1980, the informant reported to the auto theft unit that the owner of a certain hairdressing business in Boston was in possession of a stolen grey Mercedes-Benz automobile. He also furnished the vehicle identification number (VIN) of the automobile. State police Trooper O'Malley observed a grey Mercedes-Benz parked on the street near the hairdressing business in late October or early November, 1980, and noted the license plate number and the VIN, which was on the dashboard and visible through the windshield. A check of the license number produced the defendant's name and address. A check of the VIN, through State police headquarters, indicated that it belonged to a stolen Mazda automobile.

O'Malley reported to a Lieutenant Powers that the VIN was reported as belonging to a Mazda automobile and not a

Mercedes-Benz automobile. The informant was contacted but could not explain the discrepancy. It appeared later that the Boston police had entered the wrong manufacturer's name into the computer when the vehicle was reported stolen. The judge found that an officer with any experience with stolen cars could have ascertained that the VIN in question was in fact a Mercedes-Benz serial number.

By the second week in November, 1980, the police had been able to verify and corroborate much of the information received from the informant. On November 20, 1980, using information from the informant as well as other information, the police obtained a warrant to search the East Boston premises of the suspected ringleaders of the stolen car operation. Nonetheless, because of the Mazda/Mercedes discrepancy, the police did not apply for a warrant in the defendant's case.

On the evening of November 19, 1980, Powers directed State police Officer McGrail to locate a grey Mercedes-Benz which was suspected of having been stolen. McGrail was given a description of the car, the VIN, the defendant's name, and the locations of the defendant's residence and place of business. The following morning, McGrail went to the defendant's place of business, arriving before it had opened. He waited across the street in an unmarked car. At approximately 9:30 A.M., the defendant appeared, driving a grey Mercedes-Benz. McGrail approached the defendant and identified himself as a member of a team investigating stolen motor vehicles. After determining that the VIN visible on the dashboard was the same as the VIN supplied by Powers, McGrail asked the defendant for his license and registration. The defendant informed McGrail that the registration was not available. McGrail then stated that the vehicle was stolen and asked to speak further with the defendant. When the defendant responded that they would talk later, he was arrested. McGrail called the VIN into headquarters and, when it was reported to belong to a stolen Mazda, he ordered the vehicle towed to the Commonwealth Armory. During a subsequent "inventory search"

by the auto theft unit, a small computer, later identified as stolen, was found in the trunk of the vehicle.

The defendant argues that the police lacked probable cause to seize the car, and that the computer should be suppressed as the fruit of the illegal seizure of the car. The Commonwealth maintains that the defendant lacks "standing" under the Fourth Amendment to the United States Constitution to challenge the legality of the warrantless seizure and search of the Mercedes-Benz automobile. Alternatively, the Commonwealth urges that the car was properly seized upon probable cause and the computer was properly seized in the course of a lawful inventory search. We assume, without deciding, that the defendant had standing to challenge these seizures.[1]

1. *Seizure of the automobile.* The Mercedes-Benz automobile was parked on a public street at the time it was seized. Thus, McGrail's initial approach to the automobile entailed no "search" for the vehicle in the Fourth Amendment sense of an intrusion into an area where the defendant had a reasonable expectation of privacy. *Sullivan* v. *District Court of Hampshire,* 384 Mass. 736, 741-742 (1981). *Commonwealth* v. *Simmons,* 383 Mass. 46, 54 (1981). See *G.M. Leasing Corp.* v. *United States,* 429 U.S. 338, 351 (1977); *Cardwell* v. *Lewis,* 417 U.S. 583, 593 (1973) (plurality opinion). For similar reasons, we conclude that no search occurred when first O'Malley, and then McGrail read the VIN on the dashboard of the Mercedes-Benz.

---

[1] At the hearing on the motion to suppress, the defendant appears to have relied on the "automatic standing" rule of *Jones* v. *United States,* 362 U.S. 257 (1960), which was overruled in *United States* v. *Salvucci,* 448 U.S. 83 (1980). On appeal, the defendant argues only that he has standing under the new principles articulated by the Supreme Court in *Salvucci, supra, Rawlings* v. *Kentucky,* 448 U.S. 98 (1980), and *Rakas* v. *Illinois,* 439 U.S. 128 (1978). His arguments do not raise any issue under the Constitution of the Commonwealth. Our resolution of this case makes it unnecessary for us to consider whether "we would adhere, under our State Constitution, to the portion of *Jones* giving automatic standing to [defendants charged with crimes of possession]." *Commonwealth* v. *Podgurski,* 386 Mass. 385, 391 n.11 (1982).

The VIN was visible through the windshield to anyone stand-ing outside the vehicle. The officers made no intrusion into the vehicle to locate it. The defendant could have had no reasonable expectation of privacy in the VIN in these cir-cumstances. *Commonwealth* v. *Dolan*, 352 Mass. 432, 433 (1967). *United States* v. *Wagner*, 497 F.2d 249, 252 (10th Cir. 1974). 1 W. LaFave, Search and Seizure § 2.5(d), at 357-358 (1978). See *Commonwealth* v. *Baldwin*, 11 Mass. App. Ct. 386, 391 (1981).

The only issue then is whether the police properly seized the Mercedes-Benz on November 20, 1980.[2] The judge found the seizure of the vehicle illegal on the ground that "there was no probable cause to arrest Hason on the street . . . and to seize the car." Taken alone, this sentence sug-gests that the judge viewed the legality of the arrest as the crucial factor in determining the legality of the seizure. At other points, though, he found it significant that the police made "no effort . . . to get a warrant," and seized the vehi-cle "pursuant to the plan to make warrantless seizures." It has long been the law of this Commonwealth that an officer may arrest a person without a warrant if he has reasonable grounds for believing that that person has committed a fel-ony. *Commonwealth* v. *Holmes*, 344 Mass. 524, 525 (1962). See *United States* v. *Watson*, 423 U.S. 411 (1976) (finding warrantless midday public arrest not violative of Fourth Amendment). Contrast *Payton* v. *New York*, 445 U.S. 573, 576 (1980) (finding warrantless, nonconsensual police intru-sion into home for purpose of effecting routine felony arrest prohibited by Fourth Amendment). Since probable cause

---

[2] We do not suggest that the police needed actual physical custody of the Mercedes-Benz in order to charge the defendant with a violation of G. L. c. 266, § 28. If the seizure of the Mercedes-Benz was improper, however, the computer found in the vehicle's trunk would have to be suppressed. We do not read *United States* v. *Pappas*, 613 F.2d 324, 330-331 (1st Cir. 1979), as supportive of the Commonwealth's contention that the com-puter should not be suppressed even if the Mercedes-Benz were unlawfully seized.

alone would be enough to validate the arrest in this case, the judge's reliance on the absence of a warrant makes it clear that he did not view the seizure of the vehicle as in some sense "incident" to the arrest. Instead, he seems to have believed that the police must obtain a warrant to seize a vehicle found on a public street which they have probable cause to believe is stolen, unless exigent circumstances or some other exception to the warrant requirement can be shown. We therefore address two separate questions: (1) whether there was probable cause to believe that the Mercedes-Benz was stolen, and (2) whether, assuming probable cause existed, a warrant was required to effect a seizure. We conclude that probable cause existed and that no warrant was required in these circumstances.

"Probable cause exists where 'the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar* v. *United States*, 338 U.S. 160, 175-176 (1949), quoting from *Carroll* v. *United States*, 267 U.S. 132, 162 (1925). Probable cause requires more than mere suspicion but something less than evidence sufficient to warrant a conviction. *Brinegar* v. *United States, supra. Sullivan* v. *District Court of Hampshire*, 384 Mass. 736, 744 (1981). *Commonwealth* v. *Bond*, 375 Mass. 201, 210 (1978). As the Supreme Court has emphasized, "In dealing with probable cause . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar* v. *United States, supra* at 175.

The police in this case acted on information supplied by an informant whose communications had always proved reliable in the past. They were told by the informant that a grey Mercedes-Benz automobile with a particular VIN had been stolen and was currently in the possession of the owner of a particular business. A vehicle fitting this description

was in fact observed parked near the named business. A computer check of the VIN through a central police computer confirmed that it belonged to a stolen vehicle but revealed the type of vehicle as a Mazda, not a Mercedes-Benz. The police checked again with the informant and he reconfirmed his information that the automobile was a Mercedes-Benz. These facts gave the police ample reason to believe that the Mercedes-Benz had been stolen. Contrary to the judge's conclusion, the Mazda/Mercedes discrepancy does not establish that probable cause was lacking. While the computer's designation of "Mazda" no doubt created some confusion, it was contradicted by the informant and by O'Malley, who had found a grey Mercedes-Benz. It is not conclusive on the issue of probable cause that, in the judge's words, the police "made no attempt to get to the root of this discrepancy." Putting aside the fact that the judge also found that the discrepancy prompted the police to check back with the informant, we think the information available to the police created much more than a mere suspicion that the vehicle they seized was stolen. Probable cause does not require a showing that the police resolved all their doubts. "What had to be shown was more than a suspicion of criminal involvement, something definite and substantial, but not a prima facie case of the commission of a crime, let alone a case beyond a reasonable doubt." *Commonwealth* v. *Bond*, 375 Mass. 201, 210 (1978).

A finding of probable cause is not precluded by McGrail's testimony that, at the time he approached the Mercedes-Benz, he had only a suspicion that the vehicle was stolen. The inquiry into probable cause is an objective one, requiring, as it does, a determination whether the facts would warrant a "reasonable" person in believing the action taken to be appropriate. The subjective beliefs of the police officer are not conclusive on this issue. *Commonwealth* v. *Gullick*, 386 Mass. 278, 284 (1982) (probable cause to arrest). *Commonwealth* v. *Miller*, 366 Mass. 387, 389 (1974) (same). 1 W. LaFave, Search and Seizure § 3.2(b), at 459-461 (1978), and cases cited. We conclude that the Commonwealth met

its burden of showing that probable cause existed. *Commonwealth* v. *Antobenedetto,* 366 Mass. 51, 57 (1974).

We turn then to the second issue raised by the judge's ruling: whether the police, notwithstanding the existence of probable cause to believe that the Mercedes-Benz had been stolen, were required to obtain a warrant before seizing the vehicle. We conclude that a warrant was not required.

The United States Supreme Court has expressly approved the warrantless seizure of certain objects found in public places. In the recent decision in *Payton* v. *New York,* 445 U.S. 573, 586-587 (1980), the Court found it "well settled that objects such as weapons or contraband found in a public place may be seized by the police without a warrant. The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." The same position is suggested by *Coolidge* v. *New Hampshire,* 403 U.S. 443 (1971), where the Court exempted from the inadvertence requirement of the "plain view doctrine," which allows the police to seize evidence discovered inadvertently in the course of a lawful intrusion, objects that are "contraband," "stolen," or "dangerous in themselves." *Id.* at 471. See W.E. Ringel, Searches & Seizures, Arrests and Confessions, § 8.5(b) (2d ed. 1980). Decisions of this court have also discussed this distinction between property possessed unlawfully and other types of property found in plain view during a search. See, e.g., *Commonwealth* v. *Accaputo,* 380 Mass. 435, 447, 449 (1980); *Commonwealth* v. *Bond,* 375 Mass. 201, 207 (1978). As the quoted passage from *Payton* v. *New York, supra,* indicates, the reason property possessed unlawfully may be seized without a warrant is that its seizure in a public place "involves no invasion of privacy."

The second assumption which the decisions discussed above reflect is that the property itself provides no "privacy interest" sufficient to make applicable the Fourth Amendment warrant requirement. The underlying rationale appears to be that where probable cause to associate property

with criminal activity exists, the owner's "privacy interest" in the property itself is at best a negligible or "unreasonable" one, and police infringement of that interest by a seizure of the property is, in the language of *Payton* v. *New York,* *supra* at 587, "presumptively reasonable."[3] This same sense of a diminished Fourth Amendment interest in contraband or stolen goods is found in *Coolidge* v. *New Hampshire,* *supra* at 471, where the plurality asserted that "to extend the scope of [an initially legitimate intrusion into a private area] to the seizure of objects — *not contraband nor stolen nor dangerous in themselves* — which the police know in advance they will find in plain view and intend to seize, would fly in the face of the basic rule that no amount of probable cause can justify a warrantless seizure" (emphasis supplied). See also W.E. Ringel, Searches & Seizures, Arrests and Confessions, § 8.5(b), at 8-35 (2d ed. 1981). Thus, *Coolidge* and *Payton* support the proposition that, when the police are in a place where they have a right to be, they may seize without a warrant articles in plain view which they have probable cause to believe are stolen. We believe this is the correct view. Since the police in this case had the requisite probable cause, they could properly seize the Mercedes-Benz.[4]

2. *Seizure of the computer.* The Commonwealth argues that the computer found in the trunk of the Mercedes-Benz was discovered in the course of a lawful inventory search. "The Supreme Court of the United States has held that an inventory search of an impounded motor vehicle is not un-

---

[3] Similar reasoning can be found in cases which hold that one in possession of a stolen vehicle has no standing under the Fourth Amendment to challenge a search of the vehicle. See, e.g., *People* v. *Pearson,* 190 Colo. 313, 319-320 (1976); *Mahar* v. *State,* 137 Ga. App. 116, 120 (1975), cert. denied, 429 U.S. 923 (1976); *State* v. *Hamm,* 348 A.2d 268, 273 (Maine 1975); *Graham* v. *State,* 47 Md. App. 287, 291-295 (1980). See note 1, *supra.*

[4] At trial, of course, the Commonwealth bears the burden of proving beyond a reasonable doubt that the defendant knew or believed, at the time he received the Mercedes-Benz, that it was stolen. *Commonwealth* v. *Boris,* 317 Mass. 309, 316 (1944).

reasonable under the Fourth Amendment to the Constitution of the United States if carried out in accordance with standard procedures and if there is no suggestion that the procedure was a pretext concealing an investigatory police motive." *Commonwealth* v. *Matchett,* 386 Mass. 492, 509-510 (1982), citing *South Dakota* v. *Opperman,* 428 U.S. 364, 376 (1976). If the inventory search is conducted in accordance with standard police procedures no warrant is required. *Id.*

The judge ordered the computer suppressed as the fruit of an illegal seizure of the Mercedes-Benz. He therefore did not reach the question whether the computer was the product of a lawful inventory search under *Commonwealth* v. *Matchett, supra,* and cases cited therein. We remand the case to the Superior Court for findings on this issue.

We reverse the judge's order allowing the defendant's motion to suppress and remand the case to the Superior Court for further findings in accordance with this opinion.

*So ordered.*