COMMONWEALTH vs. LOUIS SANTALIZ.

Worcester. May 6, 1992. - July 24, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*"School Zone" Statute. Controlled Substances. Due Process of Law*, Elements of criminal offense. *Intent. Practice, Criminal*, Duplicative punishment, Sentence. *Constitutional Law*, Sentence, Double jeopardy, Cruel and unusual punishment, Search and seizure. *Search and Seizure*, Probable cause, Threshold police inquiry. *Arrest*.

At the hearing on a criminal defendant's motion to suppress controlled substances seized from the person of the defendant's companion by police, the Commonwealth established that there was probable cause for the arrest and search where the evidence showed that, upon the appearance of a taxicab, the defendant took an object from his companion, walked to the vehicle and handed the object to the passenger who in turn handed the defendant money; that the actions of the participants were furtive; that the encounter occurred in a place known to the police as having a high incidence of drug traffic; and that an experienced officer on the scene, who had made numerous drug arrests in the neighborhood, considered the event as revealing a drug sale accomplished by the defendant with the aid of his companion. [239-242]

INDICTMENTS found and returned in the Superior Court Department on April 4, 1990.

A pretrial motion to suppress evidence was heard by *William C. O'Neil*, J.; a pretrial motion to dismiss was heard by *James P. Donohue*, J., and the cases were tried before him.

The Supreme Judicial Court granted a request for direct appellate review.

*Nona E. Walker*, Committee for Public Counsel Services, for the defendant.

*Katherine E. McMahon*, Assistant District Attorney, for the Commonwealth.

GREANEY, J. The defendant was convicted after a jury trial in the Superior Court on indictments charging him with unlawful possession of heroin with intent to distribute, G. L. c. 94C, § 32 (1990 ed.), and the unlawful possession of heroin with the intent to distribute while within 1,000 feet of the property of a school, G. L. c. 94C, § 32J, as inserted by St. 1989, c. 227, § 2.[1] Different judges of the Superior Court denied the defendant's motions to suppress the heroin and to dismiss the school zone charge on constitutional grounds. We allowed an application for direct appellate review. We affirm the convictions.

1. The defendant makes essentially the same constitutional arguments about the validity of G. L. c. 94C, § 32J, that were considered and rejected in *Commonwealth* v. *Alvarez*, *ante* 224 (1992). The same conclusions apply here.

2. The judge who heard and denied the defendant's motion to suppress made the following findings of fact. At about 11:45 A.M. on November 24, 1989, members of the Worcester police department vice squad conducted a surveillance of the Mustard Seed, a "soup kitchen" located at 93 Piedmont Street. The Mustard Seed was known to police officers as a place of high incidence of drug activity.

Officer Mark Coyle, a member of the vice squad, was assigned to the surveillance. Officer Coyle was experienced in narcotics investigations and had been involved in approximately fifty drug-related arrests in the neighborhood of the Mustard Seed prior to the surveillance in this case. Officer Coyle saw the defendant and one Sonya Torrez seated on the front porch of the Mustard Seed.[2] A yellow taxicab came to

---

[1]The school zone statute imposes a mandatory minimum sentence of two years' imprisonment on a defendant convicted of possession of heroin with intent to distribute within a school zone as therein described. See *Commonwealth* v. *Alvarez*, *ante* 224, 225 n.1 (1992), for the text of the statute.

The defendant was sentenced to serve a three-to-five-year term on his conviction under § 32, and a consecutive three-to-five-year term for his conviction under § 32J.

[2]Officer Coyle was making his observations from a distance about 100 feet away through binoculars.

a stop directly in front of the Mustard Seed. Torrez then removed something from her waistband and handed it to the defendant. The defendant went to the taxicab, and a woman got out. The defendant handed the object to the woman, and she gave him money. No conversation was observed between this woman and the defendant.[3] The woman returned to the taxicab and left. The defendant gave the money to Torrez. Based upon his observations and experience, Officer Coyle concluded that he had just observed a drug transaction. Other police officers, whom Coyle summoned by radio, then approached the defendant and Torrez, and brought them inside the Mustard Seed. A search of the defendant revealed nothing incriminating. A search of Torrez resulted in the seizure of heroin and United States currency.[4]

Where, as is the case here, an arrest and attendant search are made without a warrant, the Commonwealth bears the burden of establishing that the actions of the police met constitutional standards.[5] *Commonwealth* v. *Sumerlin*, 393 Mass. 127, 128-129 n.1 (1984), cert. denied, 469 U.S. 1193 (1985). Both the Fourth Amendment to the United States Constitution, and art. 14 of the Declaration of Rights to the Massachusetts Constitution, require that an arrest upon which a search is undertaken be based on probable cause. See *Michigan* v. *DeFillippo*, 443 U.S. 31, 36 (1979); *Commonwealth* v. *Borges*, 395 Mass. 788, 790-791 (1985); *Commonwealth* v. *Bottari*, 395 Mass. 777, 783 (1985).

---

[3]There was testimony by Officer Coyle that he had observed the defendant and Torrez conversing during and after the transaction.

[4]There was testimony at trial that the drug transaction took place within 1,000 feet of an elementary school measured both from the door of the Mustard Seed to the door of the school and from property line to property line.

[5]No evidence was seized from the defendant. The defendant was charged on the basis that he had joint and constructive possession of the heroin with Torrez. As a result, he has standing to challenge her arrest and search and the seizure from her of the drugs. See *Commonwealth* v. *Montanez*, 410 Mass. 290, 301 (1991); *Commonwealth* v. *Frazier*, 410 Mass. 235, 243-244 (1991).

"[P]robable cause exists where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense." *Commonwealth* v. *Storey,* 378 Mass. 312, 321 (1979), cert. denied, 446 U.S. 955 (1980). The test is an objective one. *Commonwealth* v. *Hason,* 387 Mass. 169, 175 (1982). *Commonwealth* v. *Ceria,* 13 Mass. App. Ct. 230, 233 n.3 (1982). "The officers must have entertained rationally 'more than a suspicion of criminal involvement, something definite and substantial, but not a prima facie case of the commission of a crime, let alone a case beyond a reasonable doubt.' " *Commonwealth* v. *Rivera,* 27 Mass. App. Ct. 41, 45 (1989), quoting *Commonwealth* v. *Bond,* 375 Mass. 201, 210 (1978). The judge who decided the motion to suppress found the case "close." We agree with that observation, but conclude, as did the judge, that the requisite probable cause existed.

Four factors in this case tend to establish that the defendant was currently committing a crime when he was observed by Officer Coyle: (1) the unusual nature of the transaction — a taxicab pulls up, the defendant takes an object from Torrez and walks to the cab where he hands the object to the passenger who in turn hands him money; (2) the furtive actions of the participants — the object that is ultimately exchanged has been hidden in Torrez' waistband and the exchange between the defendant and the purchaser is done in silence;[6] (3) the encounter occurs in a place known to the police as a place of high incidence of drug traffic; and (4) an experienced officer on the scene, who had made numerous drug arrests in the neighborhood, considered the event as revealing a drug sale accomplished by the defendant with the aid of Torrez.

---

[6]The absence of more evasiveness on the part of the participants may be explained by the fact that they were apparently unaware that Officer Coyle was secretly observing their activities.

Not one of the factors described above would by itself be sufficient to establish probable cause for arrest and search. But the whole "silent movie" disclosed to the eyes of an experienced narcotics investigator a sequence of activity consistent with a drug sale at a place notorious for illicit activity in narcotics. Thus, to an objective person, evaluating the factual and practical considerations in a nontechnical way, there was a basis reasonably to conclude that illicit activity was occurring. See *Brinegar* v. *United States*, 338 U.S. 160, 175-176 (1949); *Commonwealth* v. *Hason, supra* at 174. See for analogous cases of two-party sales of narcotics, *United States* v. *White*, 655 F.2d 1302, 1303-1304 (D.C. Cir. 1981) (probable cause made out when an officer experienced in narcotics investigation saw a woman who was a passenger in an automobile receive from the driver in exchange for money a small, unidentified object which she then exchanged with the defendant for money); *United States* v. *Green*, 670 F.2d 1148, 1150-1151 (D.C. Cir. 1981) (probable cause found where police officer saw a man approach a woman and give her money; the woman then gave the defendant money and received from him an object he had removed from a paper bag; object then given to first man). Compare *Commonwealth* v. *Ellis*, 12 Mass. App. Ct. 476 (1981) (mere exchange of object for money not enough to support probable cause when there was no evidence to "color the transaction"; no evidence of a high crime area and no mention that the observing police officer had special experience in the investigation of narcotic sales).

*Judgments affirmed.*