COMMONWEALTH *vs.* TSEZAR KOTLYAREVSKIY.

No. 02-P-531.

Essex. May 8, 2003. - September 9, 2003.

Present: LENK, SMITH, & COWIN, JJ.

*Search and Seizure,* Probable cause. *Constitutional Law,* Search and seizure, Probable cause. *Probable Cause. Arrest.*

A Superior Court judge correctly denied a criminal defendant's motion to suppress, among other things, a firearm and knife seized from the defendant incident to his arrest on charges of carrying a dangerous weapon, being an alien in possession of a firearm, and carrying a firearm without a license, where the police had probable cause to arrest the defendant for possession of marijuana. [242-246]

COMPLAINT received and sworn to in the Salem Division of the District Court Department on February 3, 2000.

A pretrial motion to suppress evidence was heard by *Michael C. Lauranzano,* J., and the case was heard by *Robert A. Cornetta,* J.

*William W. Adams* for the defendant.

*James A. Janda,* Assistant District Attorney, for the Commonwealth.

LENK, J. Following a bench trial on stipulated facts, the defendant, Tsezar Kotlyarevskiy, was convicted of carrying a dangerous weapon (double-edged knife), being an alien in possession of a firearm, and carrying a firearm without a license. On appeal, the sole issue arises from the denial of the defendant's pretrial motion to suppress, among other things, the firearm and the knife seized from him incident to his arrest. The defendant contends that the police did not have probable cause to arrest him and that the search and seizure accordingly cannot stand. We affirm.

*Facts.* We recite the pertinent facts found by the motion

judge,[1] supplemented by uncontroverted testimony adduced at the suppression hearing. See *Commonwealth* v. *Torres*, 433 Mass. 669, 670 (2001). On February 2, 2000, at about 2:00 P.M., Officer James Aziz of the Danvers police department was booking an individual named Harry Gardner, Jr., for shoplifting. Aziz had found hypodermic needles on Gardner when arresting him, and Gardner admitted to using heroin. During booking, Aziz saw a piece of paper drop from Gardner's jacket and saw Gardner step on it. Believing that it might be heroin or packaging for heroin, Aziz had Gardner take a step back and then picked up the paper, on which appeared a handwritten name and telephone number. Asked if that was his drug dealer, Gardner told Aziz that it was just a friend.

Shortly thereafter, Aziz telephoned the number on the paper to see if he could arrange a drug buy. A male voice answered and the person identified himself as "Tsezar." During the course of two conversations in which Aziz assumed the identity of "Steven," Tsezar asked where "Harry" was, and Aziz said he did not know. Aziz asked Tsezar if he would sell him heroin; Tsezar said he did not have any heroin but could sell him some marijuana. They arranged for Tsezar to sell $100 worth of marijuana to Aziz for $110, with Tsezar keeping a "dime bag" for himself. They initially planned to meet at a car dealership at a specific time but, in the second phone call, changed the location to a Dunkin Donuts shop. Aziz told Tsezar he would be in a red van with a friend.

Aziz spoke with Detective Germano of the criminal investigations unit of the Danvers police department, and Germano helped organize surveillance at the donut shop. Germano drove the unmarked red van to the Dunkin Donuts parking lot, with Aziz in the passenger seat, shortly before 2:50 P.M., and parked in the front area of the lot. The surveillance team sat in unmarked vehicles that were approximately thirty to forty feet away. Shortly thereafter, a white male approached Aziz, asked Aziz if he were "Steven" and, upon being told that he was, identified himself as "Tsezar." Aziz asked Tsezar if he had the "stuff," meaning the marijuana, and Tsezar asked Aziz if he had

[1]In the absence of clear error, the motion judge's findings of fact are binding. *Commonwealth* v. *Lopez*, 55 Mass. App. Ct. 741, 742-743 (2002).

the money. Aziz pulled out $110 and showed it to Tsezar. The latter said he did not have the stuff on him but, if Aziz gave him the money, he would go get it and come back at 6:00 P.M. Aziz refused and Tsezar said, "Well, Steven, I'm nervous about this. I don't know you." Aziz said, "Well, I don't know you either," to which Tsezar replied, "Sorry." Aziz said, "Fine," and Tsezar walked away. The entire conversation lasted one to two minutes.

After the conversation, the defendant walked behind the Dunkin Donuts building. Detective Sergeant Plamowski and Sergeant Ambrose, who were conducting the surveillance, received radio instructions from Germano to follow the defendant and make a "felony motor vehicle stop." Plamowski and Ambrose went immediately to the rear of the Dunkin Donuts building and found the defendant in his car, with the engine running. With their guns drawn and other police cruisers next to the car, the two ordered the defendant to shut the engine off, and the defendant was taken from his car. When opening the car door, Ambrose saw a knife by the car's brake handle. Plamowski secured the defendant against the car to pat frisk him and, in doing so, felt a hard, metal object. He lifted up the defendant's coat and retrieved a .357 magnum pistol. The defendant was placed under arrest; no drugs were found on the defendant or in his car.

*Discussion.* "We accept the judge's subsidiary findings absent clear error but conduct an independent review of his ultimate findings and conclusions of law." *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002). *Commonwealth* v. *Evans*, 436 Mass. 369, 372 (2002). The motion judge denied the defendant's motion to suppress, reasoning that the search was incident to a lawful arrest since the police had probable cause to arrest the defendant for conspiring to violate the controlled substances laws, G. L. c. 94C, § 40. The defendant challenges this analysis, maintaining that there was no evidence that any inchoate crime had been or was being committed.

The Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights both "require that an arrest upon which a search is undertaken be based on probable cause." *Commonwealth* v. *Santaliz*, 413 Mass. 238,

240 (1992). "[P]robable cause exists where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense." *Id.* at 241, quoting from *Commonwealth* v. *Storey*, 378 Mass. 312, 321 (1979), cert. denied, 446 U.S. 955 (1980). "Probable cause requires more than mere suspicion but something less than evidence sufficient to warrant a conviction." *Commonwealth* v. *Hason*, 387 Mass. 169, 174 (1982). Where, as here, the arresting officers are engaged in a cooperative effort with other officers, probable cause is evaluated on the basis of the collective information of all the officers involved. *Commonwealth* v. *Mendes*, 46 Mass. App. Ct. 581, 589 (1999). A search may precede the formal arrest, provided that probable cause to arrest exists independent of the results of the search. *Commonwealth* v. *Johnson*, 413 Mass. 598, 602 (1992).

The defendant maintains that what the police collectively knew was not enough to warrant a prudent person in believing that the defendant had committed or was committing a crime. The judge's conclusion that there was probable cause to believe the defendant had committed the crime of conspiracy to violate the controlled substances laws fails, the defendant argues, because there cannot be an indictable conspiracy involving, as here, only the defendant and a government agent. Massachusetts law, he maintains, retains the common-law bilateral approach to conspiracy, not the unilateral approach that the Commonwealth urges, under which a crime is committed when one person agrees to proceed in a prohibited manner. Nor could the defendant be indicted for attempting to violate the controlled substances laws, he argues, for lack of a sufficient overt act as required by G. L. c. 274, § 6. *Commonwealth* v. *Ortiz*, 408 Mass. 463, 470 (1990).

We need not address whether there was an indictable crime, for the proper inquiry in these circumstances is whether there was probable cause to arrest. Nor need we rely either upon the judge's ruling that probable cause existed to arrest the defendant for conspiracy to violate the controlled substances laws or upon the alternative urged by the Commonwealth, viz., that there was probable cause to arrest the defendant for attempting to

distribute marijuana. While we are by no means persuaded that the latter is without merit,[2] we are satisfied that a more straightforward basis exists to support the challenged search and seizure, i.e., the police had probable cause to arrest the defendant for possession of marijuana, G. L. c. 94C, § 34.[3]

When the defendant was arrested, the police collectively knew that Aziz had shortly before arranged by telephone to buy marijuana from a man named Tsezar, whose name and telephone number Aziz had gotten from a known heroin user named Harry. They knew that a man identifying himself as Tsezar had shown up within the hour at the agreed upon location, seeking out the prospective buyer "Steven." They knew that Tsezar and "Steven" had a conversation during which further conditions for the prearranged drug sale were discussed. This was enough to support a reasonable belief on the part of the police that the defendant possessed marijuana either on his person or in his car. The reasonableness of this belief does not turn on the fact that a

[2]General Laws c. 274, § 6, provides, in pertinent part, that "[w]hoever attempts to commit a crime by doing any act toward its commission, but fails in its perpetration, or is intercepted or prevented in its perpetration, shall, except as otherwise provided, be punished . . . ." The statute requires both a specific intent to commit the underlying offense and an overt act that comes quite close to accomplishment of the crime. *Commonwealth* v. *Ortiz*, 408 Mass. at 470-472. What constitutes such an overt act is both fact intensive and somewhat opaque in nature. When the search occurred here, the arresting officers knew, inter alia, that the defendant had offered to sell marijuana to Aziz, arrived soon thereafter at a designated time and place to meet Aziz, and then, indicating he was nervous about the situation, told Aziz that he would return later with the marijuana if Aziz advanced him the money. But for Aziz's refusal to hand over the cash, at least some part of a drug transaction would have taken place. Without commenting upon whether these facts would be sufficient to support a conviction for the attempt crime, the focus of our analysis must be on the different threshold involved in determining the existence of probable cause. For purposes of establishing probable cause to arrest, we think it not unreasonable for the officers to have believed that the defendant exhibited both a specific intent to distribute marijuana and had committed an overt act close to its accomplishment.

[3]"An appellate court is free to affirm a ruling on grounds different from those relied on by the motion judge if the correct or preferred basis for affirmance is supported by the record and the findings." *Commonwealth* v. *Va Meng Joe*, 425 Mass. 99, 102 (1997). Further, "[t]he fact that the officer[s] may have subjectively intended only to make an investigative stop is immaterial as long as probable cause to arrest existed." *Commonwealth* v. *Owens*, 414 Mass. 595, 600 (1993).

drug transaction was not consummated. See *Commonwealth* v. *Rivera*, 29 Mass. App. Ct. 290, 294 (1990). See also *Commonwealth* v. *Motta*, 424 Mass. 117, 122 (1997). Nor does it turn on the fact that no marijuana was later found on the defendant or in his car. In determining whether probable cause to arrest exists, the inquiry focuses on what the police knew at the time, not on whether subsequent events or discoveries proved the police right or wrong. See, e.g., *Commonwealth* v. *Snow*, 363 Mass. 778, 790 (1973). Otherwise put, a fruitful search will no more justify an arrest made without probable cause than a fruitless search will invalidate an arrest made with probable cause.

Finally, the reasonableness of the belief that the defendant was in possession of marijuana is not undermined by the defendant's offer to Aziz to return in several hours with drugs if Aziz would first give him the cash. While this might very well have been taken to mean that the defendant did not have marijuana either on him or readily accessible to him in his car, it did not have to mean this. It could also have been taken to mean that he was, as he said, "nervous about this" since he did not know Aziz and, after coming on the scene, perhaps suspected that something was amiss. In that event, of course, his decision not to pursue the transaction was independent of whether he in fact had the drugs on or with him. Given this, the defendant's statement and subsequent conduct do not alter the mix in assessing whether it was reasonable to think, based on everything the police knew, that the defendant possessed marijuana. It bears noting in this regard that

> "[i]n dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The officers must have entertained rationally more than a suspicion of criminal involvement, something definite and substantial, but not a prima facie case of the commission of a crime, let alone a case beyond a reasonable doubt."

*Commonwealth* v. *Gentile*, 437 Mass. 569, 573 (2002) (citations and quotations omitted).

As a practical matter, what the police had to go on here was considerably more than just a hunch or some reason to suspect that the defendant might be involved in criminal conduct. They knew enough to permit them reasonably to conclude that there was probable cause to arrest the defendant for possession of marijuana. The motion to suppress the search and seizure incident to that valid arrest was correctly denied.

*Judgments affirmed.*