## COMMONWEALTH vs. ANDREW LEVY.

No. 09-P-462.

Plymouth. February 12, 2010. - April 20, 2010.

Present: KANTROWITZ, GREEN, & MEADE, JJ.

Further appellate review granted, 457 Mass. 1107 (2010).

*Controlled Substances. Practice, Criminal,* Motion to suppress. *Search and Seizure,* Probable cause. *Constitutional Law,* Probable cause.

A District Court judge erred in granting a criminal defendant's pretrial motion to suppress evidence seized from the defendant's person incident to arrest, where, in light of a experienced police detective's observation, in an area known to the police as a place of high incidence of drug traffic, of a pattern of suspicious activity resembling a classic street-level drug transaction, the police had probable cause to arrest and thus to search the defendant. [620-624]

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on January 5, 2007.

A pretrial motion to suppress evidence was heard by *James F.X. Dinneen,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Roderick L. Ireland,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Jessica L. Healy,* Assistant District Attorney, for the Commonwealth.

*Mark W. Shea* for the defendant.

KANTROWITZ, J. On January 5, 2007, the defendant, Andrew Levy, was charged with possession with intent to distribute a class B substance, to wit, cocaine, in violation of G. L. c. 94C, § 32A(*a*), and possession with intent to distribute a class B substance in a school zone, in violation of G. L. c. 94C, § 32J. On August 19, 2008, a District Court judge allowed, in part, the defendant's motion to suppress, resulting in the suppression of

twenty-eight individually wrapped bags of "crack" cocaine seized from the defendant's person incident to his arrest.[1]

On appeal, the Commonwealth argues that the judge erred in suppressing the drugs because the police observed a pattern of activity resembling a classic street-level drug transaction, which provided probable cause to arrest the defendant. We agree.

*Facts.* We recite the facts found by the motion judge, supplementing them as appropriate where evidence is undisputed and uncontroverted and where the judge explicitly or implicitly credited a witness's testimony. See *Commonwealth* v. *Isaiah I.*, 448 Mass. 334, 337 (2007). On January 4, 2007, Detective George Khoury was conducting surveillance of a set of pay telephones located outside Rice's Market in Brockton. At the motion hearing, Detective Khoury testified that he has been a police officer for thirteen years, including ten years as a member of the Brockton police narcotics unit (BPNU); as a member of the BPNU, he received special training in narcotics, worked undercover numerous times, and made over 500 narcotics-related arrests. Detective Khoury testified that the pay telephones were "frequently used to arrange for drug transactions," and that the BPNU had made "multiple arrests which led to the seizure of drugs" as a result of surveillance on these particular pay telephones. He specified that "within a year of this event I probably made about five arrests" in that neighborhood for "[d]rug distribution, possession, and prostitution."

At approximately 10:00 P.M., Detective Khoury observed a green Ford Contour automobile occupied by an unknown male and two females pull up to the pay telephones. The male left the Ford, placed a telephone call lasting approximately twenty seconds, and then returned to the vehicle, which drove away. Detective Khoury followed the Ford for approximately three-quarters of one mile to a residential area on Bellevue Avenue, where the driver pulled the car to the side of the road and turned off its headlights. Detective Khoury parked on Bellevue Avenue and observed that, at first, nobody got out of the vehicle,

---

[1]Codefendant Kyle Bryant, who was arrested and charged along with the defendant, also filed a motion to suppress the cocaine and money found on or about his person, which the judge denied. Bryant subsequently resolved his case and is not a party to this appeal.

but shortly thereafter, the same male who had made the call at the pay telephones left the Ford and paced up and down the street. During this time, Detective Khoury did not see anyone from any of the neighboring houses approach the Ford, nor did the male or the other passengers approach any of the homes on the street.

A few minutes later, a Pontiac Bonneville automobile with three occupants drove onto Bellevue Avenue and stopped approximately ten feet to the left of Detective Khoury's unmarked car.[2] The unknown male ran to the Pontiac, entered the car, and sat behind the driver, who proceeded to drive the car away. Detective Khoury followed the Pontiac as it drove to Intervale Street, turned right, and continued toward Faxon Street. The Pontiac stopped after traveling a total of approximately 200 yards around the block; the total time of the trip was approximately thirty seconds. The male then emerged from the Pontiac and walked back toward Bellevue Avenue, where the Ford was parked.[3]

Detective Khoury did not witness an exchange of any items between the male and the individuals in the Pontiac. Nonetheless, based on his "training and experience" and "all the events that occurred," Detective Khoury testified that he "knew for a fact" that "a drug transaction had occurred." He checked the license plate number of the Pontiac with the Registry of Motor Vehicles (registry) and learned that the registered owner, Kyle Bryant, had a suspended license. After briefly losing track of the Pontiac, Detective Khoury radioed for back-up and then, with assistance of other officers, stopped the Pontiac as it was attempting to pull away from a nearby gasoline station.

The officers asked the driver, who turned out to be Bryant, and the defendant, who was seated in the front passenger seat, to get out of the vehicle, and they proceeded to search both men. Sergeant O'Connell found $350 in cash in Bryant's pocket, and in addition to that discovery, Detectives Khoury and Hilliard found twenty-eight individually packaged bags of crack cocaine in the defendant's boot. Both men were then placed in a cruiser to be driven to the police station. (The third occupant

---

[2]Detective Khoury did not recognize any of the occupants of either car.

[3]Detective Khoury did not see the unknown male get back into the Ford, nor were the car or its occupants later located.

of the Pontiac, a woman who sat behind the defendant, was apparently released. The record does not reveal whether she was searched.) During the drive, officers observed the two men moving around in the back seat; when they pulled the cruiser over, they witnessed Bryant spitting crack cocaine out of his mouth and a bag "sticking out of [the] groin area" of the defendant's pants. The officers also observed several additional bags of crack cocaine in the back of the cruiser.

Contemporaneously, other officers drove the Pontiac to the police station, where they performed a search and found a scale and handmade business cards with Bryant's telephone number on them in the trunk of the car.

The motion judge, crediting the testimony given by Detective Khoury, an "experienced Brockton [p]olice detective," found that the pay telephones in question were "often used to set up drug deals." The judge ruled that "the officers had a reasonable and articulable suspicion that the people in the Pontiac were operating as a team, selling drugs," and that the fact that the registry records showed that the owner of the Pontiac had a suspended license "provided an independent basis to stop the car." However, the judge concluded that the facts were "not sufficient to justify a full search" of the defendant for evidence.[4,5]

*Discussion.* The Commonwealth argues that, in light of Detective Khoury's observations, the police had probable cause to arrest the defendant, and his motion to suppress the crack cocaine should therefore have been denied.[6]

---

[4]We note that the judge's memorandum and order granted the defendant's motion to suppress only as to "the crack cocaine found in [the defendant's] boot," and not as to the cocaine or money found on or about Bryant or the cocaine found in the back seat of the cruiser.

[5]The judge denied Bryant's motion to suppress the cocaine found on his person on the following basis: "Bryant's license was suspended and he could have been arrested for operating with a suspended license and searched, incident to his arrest for this offense. If no cocaine had been found in [the defendant's] boot, this would have been the likely outcome. Because I find that Bryant's arrest was proper, the cocaine found on Bryant after his arrest . . . is not suppressed."

[6]The Commonwealth does not contest, and we do not revisit, the judge's conclusion that in the circumstances the search of the defendant was not justifiable as a protective search conducted for officer safety. That being so, the police officers had to have probable cause to arrest the defendant when they searched him. See *Commonwealth* v. *Kennedy*, 426 Mass. 703, 705 n.1 (1998).

When reviewing a ruling on a motion to suppress, "we accept the motion judge's subsidiary findings of fact absent clear error, and conduct an independent review of the judge's ultimate findings and conclusions of law." *Commonwealth* v. *Stephens*, 451 Mass. 370, 381 (2008). "We defer to the motion judge's determination regarding the weight and credibility of the testimony presented at the suppression hearing." *Ibid.* "[O]ur duty is to make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." *Commonwealth* v. *Mercado*, 422 Mass. 367, 369 (1996), citing *Commonwealth* v. *Robbins*, 407 Mass. 147, 151 (1990).

" '[P]robable cause exists where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense.' . . . 'The officers must have entertained rationally "more than a suspicion of criminal involvement, something definite and substantial, but not a prima facie case of the commission of a crime, let alone a case beyond a reasonable doubt." ' " *Commonwealth* v. *Santaliz*, 413 Mass. 238, 241 (1992). In determining whether the record establishes that "the activity observed . . . fit a 'pattern' or constituted a 'classic street level drug transaction' " sufficient to establish probable cause, "[r]easonable inferences and common knowledge are appropriate considerations." *Commonwealth* v. *Kennedy*, 426 Mass. 703, 705, 707 (1998) (citation omitted).

In examining whether probable cause existed, we consider "the whole 'silent movie' disclosed to the eyes of an experienced narcotics investigator," particularly where there was "a sequence of activity consistent with a drug sale at a place notorious for illicit activity in narcotics." *Commonwealth* v. *Santaliz*, 413 Mass. at 242. While the appearance of a single factor suggesting illicit activity would be insufficient to establish probable cause, the presence of multiple factors "tend[s] to establish that the defendant was currently committing a crime when he was observed." *Id.* at 241. Among the factors we consider are "(1) the unusual nature of the transaction . . . ; (2) the furtive actions of the participants . . . ; (3) [whether] the encounter occurs in a

place known to the police as a place of high incidence of drug traffic; and (4) [whether] an experienced officer on the scene, who had made numerous drug arrests in the neighborhood, considered the event as revealing a drug sale accomplished by the defendant." *Ibid.* See *Commonwealth* v. *Gant*, 51 Mass. App. Ct. 314, 318 (2001) ("[I]t is settled by numerous decisions that a concurrence of [multiple] factors . . . readily cumulate to provide probable cause"), quoting from *Commonwealth* v. *Rivera*, 27 Mass. App. Ct. 41, 43 (1989).

While "whether the officer sees an object exchanged is an important piece of evidence that supports probable cause, and its absence weakens the Commonwealth's probable cause showing," it "would critically handicap law enforcement to require in every circumstance that an officer not only witness an apparent exchange, but also see what object was exchanged, before making a search incident to an arrest." *Commonwealth* v. *Kennedy*, 426 Mass. at 711. Accord *Commonwealth* v. *Coronel*, 70 Mass. App. Ct. 906, 907 (2007).

Here, while it is a close question, multiple factors support the existence of probable cause to arrest and search the defendant.[7] On the first *Santaliz* factor, the sequence of events, including the brief call at the pay telephones, the short drive, and the rapid entering and exiting of the Pontiac, amount to an "unusual" transaction. See *Commonwealth* v. *Coronel*, 70 Mass. App. Ct. at 906-907 (female placed brief call at pay telephone, waited in her car until another car arrived, followed the other car for a short distance, and another passenger from her car entered the second car for ten to fifteen seconds before emerging from the car while stuffing something into his pocket). See also *Commonwealth* v. *Santaliz*, 413 Mass. at 241; *Commonwealth* v. *Kennedy*, 426 Mass. at 708.

On the second *Santaliz* factor, while the actions observed were not necessarily "furtive," the "quickness of the interaction between [the persons observed] reasonably could be interpreted by the officer as suspicious conduct, similar to the suspicious

---

[7] "The fact that the search preceded the formal arrest is not important, 'as long as probable cause [to arrest] existed independent of the results of the search.' " *Commonwealth* v. *Johnson*, 413 Mass. 598, 602 (1992), quoting from *Commonwealth* v. *Santiago*, 410 Mass. 737, 742 (1991).

conduct of the 'furtive' transaction observed in the *Santaliz* case." *Commonwealth* v. *Kennedy*, 426 Mass. at 709. Here, following a twenty-second call placed by the unknown male at pay telephones known to be used for drug transactions, the defendant and his companions picked up the male on a nearby residential street, then drove 200 yards for thirty seconds before the male left the car. See *Commonwealth* v. *Coronel*, 70 Mass. App. Ct. at 906-907. These suspicious activities support at least an inference of criminal activity, and "[a]n inference [supporting probable cause] 'need only be reasonable and possible; it need not be necessary or inescapable.' " *Commonwealth* v. *Kennedy*, 426 Mass. at 708, quoting from *Commonwealth* v. *Merola*, 405 Mass. 529, 533 (1989).[8]

On the third *Santaliz* factor, the observations began at "a place known to the police as a place of high incidence of drug traffic." *Commonwealth* v. *Santaliz*, 413 Mass. at 241. Detective Khoury testified that the pay telephones were "frequently used to arrange for drug transactions," and based on surveillance of these telephones the BPNU had made "multiple arrests which led to the seizure of drugs," including five arrests he himself had made in the past year.[9]

Detective Khoury's extensive training and experience in narcotics, including his experience making narcotics arrests in that neighborhood, also help to make applicable the fourth *Santaliz* factor regarding probable cause, as he was "an experienced officer on the scene, who had made numerous drug arrests in the neighborhood, [and] considered the event as revealing a drug sale accomplished by the defendant."[10] *Ibid.* While Detective Khoury did not see any apparent transfer of items take place

[8]The defendant argues that the actions observed by Detective Khoury could be viewed as innocuous. When asked at oral argument to suggest some *reasonable* explanations, counsel was hard pressed to do so.

[9]Contrary to the defendant's assertion, the fact that the transaction took place three-quarters of one mile from the telephones, in a residential area, does not negate the fact that the observations began at a location known for drug transactions. In fact, the drive to the nearby residential neighborhood contributes to the suspiciousness of the activity, in that it supports the inference that the participants went to a less public place to conduct the transaction.

[10]The defendant attempts to distinguish his case from *Kennedy* and *Coronel* on the basis that none of the parties here were known to the police as drug dealers or users. See *Commonwealth* v. *Kennedy*, 426 Mass. at 709; *Commonwealth* v. *Coronel*, 70 Mass. App. Ct. at 907. While knowledge on the part of the police

between the unknown male and an occupant of the Pontiac, the other factors in this case "are sufficient to overcome the officer's failure to actually see the object exchanged in the drug transaction," *Commonwealth* v. *Kennedy*, 426 Mass. at 711, or specific movements suggesting such an exchange. See *Commonwealth* v. *Coronel*, 70 Mass. App. Ct. at 907.[11]

*Conclusion.* As the entire "silent movie" observed by Detective Khoury provided the police with probable cause to arrest and thus search the defendant, the order granting his motion to suppress the crack cocaine found on his person at the time of his arrest is reversed.

> *Order partially allowing motion*
> *to suppress reversed.*

---

that the person observed has been involved in the drug trade is a factor to consider in determining whether probable cause existed, *Commonwealth* v. *Kennedy*, 426 Mass. at 709-710, that factor alone is not dispositive. See *Commonwealth* v. *Santaliz*, 413 Mass. at 241-242 (no mention of officer's prior knowledge of defendant); *Commonwealth* v. *Gant*, 51 Mass. App. Ct. at 318 ("the record contains nothing . . . to demonstrate the police officer's knowledge of the reputations of [the observed parties] as drug dealers or users").

[11]Although the judge made no specific finding on the point, the testimony was uncontroverted that the search of Bryant shortly preceded that of the defendant and revealed $350 in cash, which would be additional evidence of drug dealing. See *Commonwealth* v. *Clermy*, 421 Mass. 325, 331 (1995) (moderate amount of cash in one's possession a traditional accoutrement of illegal drug trade). That different officers discovered the money on Bryant and the drugs on the defendant is of no consequence. "Where, as here, the arresting officers are engaged in a cooperative effort with other officers, probable cause is evaluated on the basis of the collective information of all the officers involved." *Commonwealth* v. *Kotlyarevskiy*, 59 Mass. App. Ct. 240, 243 (2003), citing *Commonwealth* v. *Mendes*, 46 Mass. App. Ct. 581, 589 (1999).