Fabricant, Judith, J.
INTRODUCTION
The defendant is charged with trafficking in cocaine and related offenses. Before the Court is the defendant’s motion to suppress evidence found on his person in connection with his arrest. Based on the following findings and rulings, the motion will be allowed.
FINDINGS OF FACT
On April 16, 2010, at about 7:00 p.m., members of the Boston Police Department Drug Control Unit were in the area of the Shawmut Avenue MBTA station. Police had made arrests for narcotics offenses in that area before. The officers were in plain clothes, in several unmarked vehicles. They communicated with each other by police radio. Cellular telephone communications may also. have occurred among some of them, but the evidence does not indicate that any telephone communications occurred of significance to the issues presented in this motion.
*85 Officer John Rogers, who had substantial training and experience in narcotics investigations, observed a woman, later identified as Angela Hodges, standing on a street corner outside the MBTA station. She paced back and forth, and made several calls on her cellular telephone. After about twenty minutes, the defendant drove up in a BMW and stopped across the street from Hodges. Hodges looked at the car for about ten seconds, according to Rogers’s estimate, and then crossed the street and got into it on the passenger side. The BMW drove off, with Rogers and other officers following.
After a drive of about one-half mile, including several turns, the BMW stopped on Whitten Street, and Hodges got out and began to walk. Officer Adams continued to follow the BMW. Rogers and Officer Brown each stopped his own vehicle and got out. Rogers approached Hodges from in front of her, and Brown approached from behind her. As Rogers approached Hodges, he identified himself as a police officer. Hodges dropped something on the ground. Brown retrieved it, and determined that it appeared to be a “ball” (that is, a small quantity commonly purchased) of crack cocaine. Rogers then informed the other officers, by radio, that drugs had been recovered. With that information, Adams enlisted a marked police unit to stop the BMW. Immediately upon making the stop, the officers arrested the defendant, advised him of his Miranda rights, and transported him to the area Cll police station.[1]
After having broadcast to the other officers that drugs had been recovered, Rogers informed Hodges of her Miranda rights and then initiated a conversation with her. In response to his questions, she acknowledged that she had just bought the cocaine from the driver of the BMW, whom she knew as Levi. She provided Rogers with a cellular telephone number for the defendant. Rogers did not communicate that information to the other officers at that time, but shared it with them later, after the defendant’s arrest and booking, when the officers convened at the police station. The evidence does not provide a basis for determination of the precise sequence as between Hodges’s statements to Rogers and the defendant’s arrest. It is clear, however, that the arresting officers had no knowledge of Hodges’s statements, and did not consider them in deciding to arrest the defendant. If, in fact, Hodges’s statements preceded the moment of arrest, the Commonwealth has not so proven. What the evidence proves is that, at the time of the arrest, the collective knowledge of the police consisted of the observations the officers had made up to and including Brown’s recovery of the cocaine Hodges had dropped, but did not include her statements thereafter.
Upon the defendant’s arrival at the station, other officers, including Officer Gerald Cahill, confirmed that the defendant had received Miranda warnings, and asked whether he had drugs on him. He acknowledged that he did, and directed the officers to his hat, where they recovered a substantial quantity of what appeared to be cocaine in both powder and crack form. He also acknowledged having marijuana, a quantity of which the police found in his waist area. The officers also recovered some $5,319 in cash, some of which the defendant acknowledged he had obtained from selling drugs that evening. The defendant asked the officers whether “the girl gave me up,” and admitted to having sold her “a little bit” of cocaine.
DISCUSSION
The defendant argues that the evidence seized from him must be suppressed because the police had no probable cause to arrest him at the time they did. The Court agrees. “Probable cause exists where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense ... The officers must have entertained rationally more than a suspicion of criminal involvement, something definite and substantial, but not a prima facie case of the commission of a crime, let alone a case beyond a reasonable doubt.” Commonwealth v. Santaliz, 413 Mass. 238, 241 (1992) (internal quotations and citations omitted).
Here, the facts proved by the Commonwealth at the hearing indicate that the information available to the police at the time of the arrest was limited to Officer Rogers’s observations of Hodges as she waited outside the MBTA station, her brief ride in the BMW with the defendant, and then her abrupt disposal of a small quantity of cocaine as the police approached. Based on this information, the police had ground for reasonable suspicion that Hodges had purchased the cocaine from the defendant during her ride with him. They did not, in the Court’s view, have probable cause to believe that that had occurred.
Hodges’s behavior outside the MBTA station was consistent with waiting for a drug delivery, but it was at least as consistent with simply waiting for a ride. Her ten-second hesitation upon the defendant’s arrival was consistent with uncertainty as to the identity of the vehicle, but it was also consistent with momentary distraction, of no significance. Her short ride was consistent with a drug transaction, but other explanations come readily to mind: perhaps she and the driver had a quarrel, and she chose to walk the rest of her route; or they realized that some important errand had been forgotten, and he let her out while he went to complete it; or they met for the purpose of her delivering something—lawful or otherwise—to him, and then he drove her the short distance to her destination. Her attempt to dispose of the cocaine as police approached indicated that she was engaged in illicit activity, but that does not mean the defendant was; she might just *86 as well have had the cocaine on her person when she entered his vehicle.[2]
The information the police had gave them at least two lawful options. They could have continued to observe the defendant surreptitiously, while conducting further investigation—such as by interviewing Hodges. That course would have required no legal justification, and might well have provided additional observations that would have amounted to probable cause, with or without Hodges’s statements.[3] The officers also had the option of stopping the defendant and conducting a threshold inquiry, during which they might have obtained statements or observations that would have given rise to probable cause; that course would have required reasonable suspicion, which they had. Unfortunately, the police followed neither of these courses, but proceeded directly to arrest. To justify that step, they needed probable cause, which the information they had at the time did not provide.
Commonwealth v. Santaliz, supra, on which the Commonwealth relies, rested on facts that stand in sharp contrast to these; indeed the factual variance provides a useful illustration of the difference between reasonable suspicion and probable cause. There, police observed the defendant take an object from a person who had stored it in his waistband, approach a taxicab, hand the object to the passenger, and receive money from the passenger, all in silence. 413 Mass. at 241. Although the Court considered the question close, it held that those observations, made by experienced narcotics officers in a high crime area, provided probable cause to believe that the defendant had engaged in a drug transaction. The observations the police made here, in this Court’s view, fell on the other side of the line; although they provided reasonable suspicion, they did not rise to the level of probable cause.
CONCLUSION AND ORDER
The defendant’s Motion to Suppress is ALLOWED.

 Radio transmissions at the time of the arrest include a reference to the defendant having “a lot of money on him.” I infer from that, and from usual police practice, that at least a perfunctory search of the defendant’s person occurred at the time of the arrest, before he was transported.

The Commonwealth urges the inference that the cocaine was in her hand, suggesting that she had just received it. Rogers’s testimony as to his observations when she dropped it was not sufficiently precise to indicate that she did not remove it from a pocket or other receptacle. The evidence provides no information as to whether Hodges was carrying a bag, purse, briefcase, or other container, and no description of her clothing or appearance.

Indeed, as events played out, it is apparent that that course would have provided probable cause, based on Hodges’s statements.