NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11637

COMMONWEALTH  vs.  ILYA I., a juvenile.

Suffolk.     October 6, 2014. - February 13, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.

Controlled Substances.  Probable Cause.  Juvenile Court,
    Delinquent child.  Practice, Criminal, Juvenile delinquency
    proceeding, Complaint, Dismissal.

Complaint received and sworn to in the Suffolk County
Division of the Juvenile Court Department on June 4, 2012.

A motion to dismiss was heard by Leslie E. Harris, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

Gail S. Strassfeld for the juvenile.
Cailin M. Campbell, Assistant District Attorney, for the
Commonwealth.

HINES, J.  After a street encounter in the Dorchester

section of Boston, a police officer arrested the juvenile and

charged him with possession of a class D substance with the

intent to distribute in violation of G. L. c. 94C, § 32C (a).  A

clerk-magistrate issued a delinquency complaint formally charging the juvenile with the offense. A judge in the Juvenile Court allowed the juvenile's motion to dismiss the complaint for lack of probable cause. The Commonwealth sought review in the Appeals Court, which reversed the dismissal in an unpublished decision. See Commonwealth v. Ilya I., 84 Mass. App. Ct. 1128 (2014). We granted the juvenile's petition for further appellate review and now affirm the dismissal of the complaint.

Background. Our review of the judge's order of dismissal is confined to the four corners of the application for complaint, which in this case is essentially the police incident report detailing the facts underlying the juvenile's arrest.[1] Following is a summary of the police incident report.[2]

On June 1, 2012, members of the youth violence strike force, a unit within the Boston police department, were conducting surveillance in Codman Square in Dorchester. The police officers were familiar with that area as being one where drug and gang activity took place. Shortly before 5 P.M., the

---

[1] A motion to dismiss a complaint for lack of probable cause "is decided from the four corners of the complaint application, without evidentiary hearing." Commonwealth v. Humberto H., 466 Mass. 562, 565 (2013), quoting Commonwealth v. Huggins, 84 Mass. App. Ct. 107, 111 (2013).

[2] The narrative contained in the police incident report lacks clarity in its description of the sequence of events as well as the conduct of the juvenile, who was the only person arrested.

officers observed four black teenagers in the vicinity of Washington Street and Talbot Avenue. A male and a female approached the teenagers and engaged them in a "brief conversation." Two of the teenagers walked up Washington Street toward Southern Avenue with the couple. The other two teenagers remained in the location where the first encounter with the couple occurred and appeared to look up and down Washington Street. When the two teenagers and the couple reached Southern Avenue, they had a "brief interaction," after which the teenagers walked back in the direction from which they had come. Based on these observations, the police officers believed that "a drug transaction may have occurred." They relayed this information to other police officers in the vicinity.

As the police officers approached a restaurant located at the corner of Washington Street and Talbot Avenue, the four teenagers walked away "in a hurried manner." The juvenile, who was part of the group of black teenagers under surveillance, looked back at the police officers several times as he crossed Washington Street. The juvenile and the other teenagers entered a vehicle parked on Washington Street across from the restaurant. Two of the teenagers got out of the vehicle and walked up Washington Street in the same direction as before. The vehicle followed and stopped after about one block, where the two teenagers who had gotten out reentered the vehicle. The

vehicle left the area, turning onto Aspinwall Road and then onto Whitfield Street before stopping at the corner of Dunlap Road and Whitfield Street.

At that location, the police officers approached the vehicle on both sides.[3]  A police officer asked the passenger to roll down his window.  The passenger opened the door instead of rolling down the window, and the police officer smelled the odor of unburnt marijuana.  The police officers requested identification from the driver and the passenger; the passenger did not produce identification, and the driver did not have a valid license to operate the vehicle.  The occupants were then ordered to get out of the vehicle.  As the juvenile got out, the police officer noticed that the juvenile twice looked down at his groin area which, along with the smell of unburnt marijuana, prompted a patfrisk and the subsequent discovery of thirteen individually wrapped bags of marijuana inside a clear plastic sandwich bag.

Discussion.  Where an arrest occurs without a warrant, a judicial officer must review the complaint application for probable cause to believe that the person arrested committed the offense charged before issuing the complaint.  See Commonwealth v. Lester L., 445 Mass. 250, 255 (2005); Commonwealth v.

_____

[3] The police incident report is unclear as to the number of persons in the vehicle at the time of the stop.

DiBennadetto, 436 Mass. 310, 313 (2002); Mass. R. Crim. P. 3 (g) (2), as appearing in 442 Mass. 1502 (2004). The complaint application must allege facts sufficient to establish probable cause as to each element of the offense charged. See Commonwealth v. Moran, 453 Mass. 880, 884 (2009). After the issuance of a complaint, the defendant (or juvenile) may challenge the probable cause finding by a motion to dismiss. DiBennadetto, supra. The probable cause standard on a motion to dismiss a complaint is identical to that applied in the analysis of a motion to dismiss an indictment for lack of probable cause. See Lester L., 445 Mass. at 255-256, citing Commonwealth v. O'Dell, 392 Mass. 445, 450 (1984). As the issue of probable cause presents a question of law, we review the motion judge's determination de novo. Commonwealth v. Humberto H., 466 Mass. 562, 566 (2013).

1. The probable cause standard. "[P]robable cause exists where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense." Commonwealth v. Stewart, 469 Mass. 257, 262 (2014), quoting Commonwealth v. Santaliz, 413 Mass. 238, 241 (1992). The test is objective. The validity of the police officer's conduct is determined by focusing on whether a "reasonable" person would concur in the

action taken.  Commonwealth v. Daniel, 464 Mass. 746, 751 (2013), citing Commonwealth v. Hason, 387 Mass. 169, 175 (1982). Therefore, we require only that "[t]he officers must have entertained rationally 'more than a suspicion of criminal involvement, something definite and substantial, but not a prima facie case of the commission of a crime, let alone a case beyond a reasonable doubt.'"  Santaliz, supra at 241, quoting Commonwealth v. Rivera, 27 Mass. App. Ct. 41, 45 (1989).  Put succinctly, probable cause "requires more than mere suspicion but something less than evidence sufficient to warrant a conviction."  Commonwealth v. Roman, 414 Mass. 642, 643 (1993), quoting Hason, supra at 174.

2.  Analysis of the complaint application.  Because the juvenile concedes possession of the marijuana found on his person, we focus our analysis on whether the complaint application contained sufficient facts to establish probable cause to believe the juvenile intended to distribute the marijuana.  The Commonwealth argues that the confluence of events described in the police incident report establishes probable cause to arrest the juvenile for possession with intent to distribute the thirteen bags of marijuana found on his person, as opposed to simple possession of the drugs.  In particular, the Commonwealth relies on the following:  (1) the quantity and packaging of the marijuana secreted in the

juvenile's groin area; (2) the juvenile's association with a group of individuals engaged in conduct consistent with a drug transaction; (3) the juvenile's nervous demeanor during the encounter with the police; (4) the odor of unburnt marijuana; (5) the traffic pattern of the vehicle in which the juvenile was a passenger; and (6) the lack of drug paraphernalia on the juvenile's person.  We recognize that probable cause is determined from the totality of the circumstances, rather than each factor separately.  Where no single factor is determinative, however, we assess separately the value of each factor in establishing the juvenile's intent to distribute, rather than simply possess, the marijuana found on his person. See Humberto H., 466 Mass. at 566. ("We consider each of these factors, recognizing that probable cause must be determined based on the totality of the evidence").

a.  The quantity and packaging of the drugs.  The Commonwealth does not argue that possession of thirteen individually wrapped bags of an unknown quantity of marijuana, standing alone, is sufficient to raise an inference of intent to distribute.  Instead, the claim is that possession of that quantity of marijuana in combination with other factors establishes probable cause to believe the juvenile intended to distribute the marijuana found on his person.  This quantity,

whatever the precise amount,[4] and the packaging in separate bags add little to the corpus of facts needed to establish probable cause.

As noted, the police incident report does not claim that the juvenile was the person who interacted with the couple when the assumed drug transaction took place. However, for the sake of argument we infer that he did so and consider the quantity and packaging in that context. A small undetermined amount of marijuana is entirely consistent with personal use. Cases involving comparable amounts illustrate the point. See Commonwealth v. Sepheus, 468 Mass. 160, 165 (2014) ("a few individually packaged rocks of crack cocaine do not suffice" to show intent to distribute); Humberto H., 466 Mass. at 568 (possession of unknown quantity of five bags of marijuana "small enough that it fit in one pocket of a pair of shorts that the juvenile wore under his pants" insufficient to show intent to distribute); Commonwealth v. Acosta, 81 Mass. App. Ct. 836, 841-842 (2012) (possession of 3.16 grams of cocaine in five individual bags insufficient to indicate intent to distribute); Commonwealth v. Andrews, 49 Mass. App. Ct. 201, 204 (2000) ("possession of 2.73 grams of cocaine, even packaged in eleven envelopes, does not, without more, clearly tend towards showing

---

[4] The complaint application does not state the quantity of marijuana, only that "13 small bags" were seized.

an intent to distribute").  In sum, possession of this quantity does not rationally create more than a suspicion that the juvenile, at the time of the arrest, possessed the marijuana with the intent to distribute the substance.

Nor does the packaging add heft to an inference that the juvenile possessed the marijuana with intent to distribute.[5] According to the police incident report, the packaging was not distinctive in any way or otherwise similar to packaging typically associated with intent to distribute.  See Sepheus,

---

[5] The Commonwealth cites no authority to advance its argument that the particular packaging evidences probable cause of intent to distribute.  We are directed instead to the following unpublished Appeals Court decisions, which have been overruled or which support the dismissal of the complaint against the juvenile.  In Commonwealth v. Pete P., 82 Mass. App. Ct. 1120 (2012), the Appeals Court reversed a Juvenile Court order dismissing a complaint against a juvenile who possessed eleven similarly packaged bags of an indeterminate amount of marijuana.  This court denied the juvenile's request for further appellate review but remanded to the Appeals Court for reconsideration in light of Commonwealth v. Humberto H., 466 Mass. 562 (2013).  Commonwealth v. Pete P., 466 Mass. 1112 (2013).  On reconsideration, the Appeals Court affirmed the dismissal of the delinquency complaint in an unpublished order. In Commonwealth v. Duncan D., 82 Mass. App. Ct. 1111 (2012), the Appeals Court also affirmed the dismissal of a delinquency complaint, which was based on a juvenile's possession of one ounce or less of marijuana packaged in six bags.  The Commonwealth also cites Commonwealth v. Balthazar B., 81 Mass. App. Ct. 1140 (2012).  Although the court in that case determined there was probable cause to issue a juvenile complaint based on possession of individual bags of a "green leafy substance," the case was decided and the defendant's application for further appellate review was denied before Humberto H., after which the Appeals Court reversed its conclusion in Pete P. on similar grounds.

468 Mass. at 165-166 (packaging of cocaine insufficient to create inference of distribution where "[t]here was no evidence that the three baggies in this case had been bundled or packaged in a manner that suggests they were the remains of a larger inventory").  Cf., e.g., Commonwealth v. Montanez, 410 Mass. 290, 305 (1991) (packaging of cocaine in paper folds indicative of intent to distribute); Commonwealth v. Pratt, 407 Mass. 647, 650 & n.3, 651, 653 (1990) (numerous bags of heroin, each marked with brand name popular in area and bundled into groups of ten wrapped together in packages of fifty, indicative of intent to distribute); Commonwealth v. Gonzales, 33 Mass. App. Ct. 728, 731 (1992) (bundling of ten packets with elastic band indicative of intent to distribute); Commonwealth v. Sendele, 18 Mass. App. Ct. 755, 758 (1984) ("distinct packaging" of drugs supported inference of distribution).  Further, the police incident report lacks specificity as to whether the individually wrapped bags contained amounts generally offered for sale.  Cf. Commonwealth v. Stephens, 451 Mass. 370, 388 (2008) (cocaine packaged in two "eight balls" and one "forty" bag), citing Commonwealth v. Wilson, 441 Mass. 390, 400-402 (2004) (marijuana packaged in "dime" bag units); Commonwealth v. Ellis, 356 Mass. 574, 578 (1970) (heroin packaged in ten dollar bags); Commonwealth v. James, 30 Mass. App. Ct. 490, 491-492 (1991) (cocaine packaged in "jumbo" bags, each worth fifty dollars).  On these facts, the

packaging does not raise a reasonable inference that the juvenile intended to distribute the marijuana.

b. The juvenile's association with suspicious persons. The juvenile's interaction with the other individuals just prior to the arrest amounts to mere association untinged with any evidence of criminality. While cast as conduct consistent with a drug transaction, the group's interaction with the couple does not fit within that description. The group, which was under surveillance at all times, had a "brief conversation" with the couple, after which two members of the group and the couple walked a short distance toward Southern Avenue where they had a "brief interaction." The narrative does not suggest an exchange of any kind between the couple and the group, either during the "brief conversation" or the "brief interaction."[6] "Although we do not require 'that an officer must actually see an object exchanged,' the suspect's movements, as observed by the officer, must provide factual support for the inference that the parties

---

[6] The Commonwealth, relying on Commonwealth v. Santaliz, 413 Mass. 238 (1992), argues that it is not important that the officers were unable to see what was exchanged between the couple and the group. This puts the cart way ahead of the horse in that it does not appear that any exchange at all occurred between the group and the couple. That illogical leap is repeated in the Commonwealth's argument that it is irrelevant whether the juvenile participated in the transaction or acted as a lookout. The police incident report provides no information from which an inference that the juvenile was a lookout reasonably might be drawn.

exchanged an object." Stewart, 469 Mass. at 263, quoting Commonwealth v. Kennedy, 426 Mass. 703, 710 (1998). Thus, other than the normal social intercourse that occurs with some frequency on the streets of Boston's neighborhoods, nothing in the police incident report supports the claim of conduct consistent with a drug transaction.

Even if the interaction with the couple during the walk toward Southern Avenue properly may be deemed consistent with a drug transaction, the narrative lacks any specificity as to whether the juvenile was a participant. Therefore, as the Commonwealth concedes, we know only that the juvenile was present in the vicinity where a drug transaction may have occurred. The Commonwealth "cannot rely on evidence that merely places the [juvenile] at the scene of the crime and shows him to be in association with the principals." Sepheus, 468 Mass. at 167, quoting Commonwealth v. Saez, 21 Mass. App. Ct. 408, 411 (1986). See Commonwealth v. Montalvo, 76 Mass. App. Ct. 319, 330 (2010) ("evidence that a defendant associated with persons who committed the crime does not lead to an inference that he also participated in the crime"). Without some narrative fact suggesting the juvenile's involvement in the criminal activity, probable cause is not supported by his mere association with the group.

c.  The juvenile's demeanor.  The Commonwealth claims that the juvenile "looked nervously" at the police officer as the juvenile crossed Washington Street and entered the vehicle. This characterization vastly overstates the juvenile's apparent reaction to becoming aware of the police presence in the area. The narrative states only that the juvenile "walk[ed] away in a hurried manner looking back at the officers several times." Even if the juvenile's behavior properly could be characterized as nervous, it lacks value in the probable cause assessment. If, as the narrative asserts, the juvenile hurriedly walked away from the area as he looked back at the police officers, he no doubt was aware that the police were conducting surveillance of his movements.  While nervousness in an encounter with a police officer may be factor in the probable cause analysis, see Commonwealth v. Sinforoso, 434 Mass. 320, 324 (2001), it lacks force in the circumstances of this case where a sixteen year old boy is under scrutiny by the police.  Even after the passage of G. L. c. 94C, § 32L, which decriminalized the possession of one ounce or less of marijuana, we have accorded little weight to a juvenile's demeanor alone.  We recognize that a juvenile who possesses marijuana may nonetheless face serious personal consequences in his or her education and career choices.  See Humberto H. 466 Mass. at 566-567 (juvenile's "defensive and agitated" demeanor explained by possible consequences of

possession of marijuana); Commonwealth v. Cruz, 459 Mass. 459, 468 (2011) ("It is common, and not necessarily indicative of criminality, to appear nervous during even a mundane encounter with police . . . ").

    d.  The odor of unburnt marijuana.  Our cases considering the odor of unburnt marijuana as a factor in the "reasonable suspicion" necessary for an exit order in a motor vehicle stop offer helpful guidance in the probable cause analysis in this case.  These cases have not accorded significance to the odor of unburnt marijuana in circumstances comparable to those at issue here.  In Commonwealth v. Overmyer, 469 Mass. 16 (2014), we held that the odor of unburnt marijuana alone was insufficient to justify the warrantless search of a vehicle.  Taking note of the 2008 ballot initiative decriminalizing one ounce or less of marijuana, we stated that "it does not follow that such an odor [of unburnt marijuana] reliably predicts the presence of a criminal amount of the substance . . . [that] would be necessary to constitute probable cause."  Id. at 21.  That principle obviously applies here.  See Commonwealth v. Fontaine, 84 Mass. App. Ct. 699, 706 (2014) ("odor of unburnt marijuana . . . standing alone, does not provide . . . probable cause to conduct a search").

    e.  The traffic pattern of the suspect vehicle.  The traffic pattern of the vehicle, in which the juvenile was a

passenger rather than the driver, does not suggest anything more than the mere possession of marijuana. The police incident report sheds no light on how the vehicle, populated with teenaged passengers, and moving from one block to another, was remarkable or otherwise typical of drug activity. Probable cause to believe that a crime has occurred requires something more than innocent behavior. See Roman, 414 Mass. at 643.

    f. The lack of smoking paraphernalia. The Commonwealth argues that the lack of smoking paraphernalia weighs against mere possession, citing Wilson, 441 Mass. at 401. Our cases have considered the lack of drug paraphernalia associated with personal use as a factor probative of an intent to distribute. See Commonwealth v. Little, 453 Mass. 766, 770 (2009). However, the lack of smoking paraphernalia in Wilson, supra, suggested intent to distribute only in conjunction with other factors noted by the court: a relatively large amount of cash, a pager, a cellular telephone, and the distinctive packaging in "dime" bags. None of those factors exists in this case. In addition, where the contraband is a small amount of marijuana, the lack of drug paraphernalia does not detract from the inference of simple possession. See Humberto H., 466 Mass. at 567-568. A person who intends only to smoke marijuana would fit precisely the profile of the juvenile in this case. For simple possession, he

had no need of cash, scales, or evenly measured packages in amounts consistent with a quick sale.

In the analysis of the totality of the circumstances, the inquiry shifts away from the relative significance of each individual factor to their collective effect in the probable cause calculus.  Even in combination, however, these factors are insufficient to establish probable cause to believe that the juvenile intended to distribute the marijuana found on his person.  Although the question is close, our analysis accords greater significance to the nature and amount of the substance, and that it was possessed by a juvenile.  Here, the substance was marijuana, and it was a small, undetermined amount.  As in Commonwealth v. Jackson, 464 Mass. 758, 765 (2013), we are mindful of the "clear policy goals" served by the passage in 2008 of "An Act establishing a sensible State marihuana policy," which decriminalized the possession of one ounce or less of marijuana, reducing it to a civil infraction.  G. L. c. 94C, § 32L, inserted by St. 2008, c. 387, § 2.  In deference to those policy goals, we exercise a measure of vigilance in our analysis of questions related to the issue of probable cause to believe that a crime has been committed.  Accommodation of those policy goals means that where a defendant or juvenile possesses a small quantity of marijuana, less than that required to trigger a criminal prosecution, the other factors must be weighed more

heavily in the probable cause analysis.  Here, none of those factors tips the scale in favor of probable cause to believe that the juvenile intended to distribute the substance.  As in Humberto H., 466 Mass. at 566-567, the juvenile's age detracts from the probative value that otherwise might be accorded to his nervous demeanor and his association with other young black males on a street corner.  While possession with the intent to distribute any amount of marijuana is a criminal offense, we reiterate that "where judicial officers evaluate probable cause [in cases involving small, presumptively decriminalized amounts of marijuana], they must be mindful of the risk that police officers or prosecutors might allege an intent to distribute based on the mere suspicion of such an intent for the purpose of charging the offender as a criminal or delinquent rather than as a civil violator."  Humberto H., supra at 570-571.  The caution to be exercised by judicial officers does not undermine a prosecutor's authority to enforce our laws prohibiting possession with the intent to distribute marijuana.

Conclusion.  For the reasons set forth, the Juvenile Court's order of dismissal is affirmed.

So ordered.

SPINA, J. (dissenting, with whom Cordy and Botsford, JJ., join).  The court has unduly parsed the various observations made by police and determined that each factor standing alone fails to establish probable cause to arrest, without adequate consideration that the factors, in combination, provide probable cause.  "When circumstantial evidence is largely relied upon to establish an issue, it is inevitable that many matters should be introduced which by themselves alone would be immaterial, although in connection with other evidence they may be helpful in discovering the truth."  Phillips v. Chase, 201 Mass. 444, 448 (1909).  See Commonwealth v. Ahart, 63 Mass. App. Ct. 413, 416 (2005) ("The defendant's attempt to isolate each piece of the Commonwealth's evidence as insufficient is unavailing").  The old adage that the whole may be greater than the sum of its parts received no consideration from the court, an unfortunate decision.

Most of the cases relied upon by the court concerning the quantity and packaging of contraband involved additional factors presented at trial to establish proof beyond a reasonable doubt, and virtually all those cases resulted in affirmances of the convictions.  Our case law provides numerous instances where a quantity of small baggies of marijuana, similar to the quantity here, were enclosed in a larger bag, also as here.  In each of these cases, the quantity and packaging, together with other

factors, including expert testimony, provided sufficient evidence to convict a defendant of possession with the intent to distribute. See, e.g., Commonwealth v. Little, 453 Mass. 766, 768, 771-772 (2009) (fifteen baggies, $254, cellular telephone, and no smoking paraphernalia); Commonwealth v. Wilson, 441 Mass. 390, 393, 400-402 (2004) (twenty baggies in bundle having combined weight of one-half ounce, $476, cellular telephone, pager, and no smoking paraphernalia); Commonwealth v. Dessources, 74 Mass. App. Ct. 232, 238 (2009) (sixteen baggies in different places on defendant's person, defendant arrested in park frequented by drug dealers, no smoking paraphernalia, three others near defendant observed passing marijuana pipe, and expert opinion that baggies had street value of $320 -- but value would be considerably less if marijuana combined in single unit); Commonwealth v. Pena, 40 Mass. App. Ct. 905 (1996) (six baggies, sixty dollars, beeper, bag containing baggies hidden in defendant's pants, and defendant fled when he saw police). The marijuana seized from the defendant here, thirteen small baggies of marijuana placed in a larger bag, in conjunction with other factors, is consistent with amounts and packaging in cases where a defendant was convicted of possession of marijuana with the intent to distribute. In one case, Wilson, supra at 400, the combined weight of marijuana in twenty baggies, fifty per cent

more than here, was one-half ounce, which is below the current threshold for criminal possession.

The location of a controlled substance on the defendant's person, his groin area, in conjunction with other factors, has been considered a factor probative of the question of intent to distribute. See Commonwealth v. DeJesus, 468 Mass. 174, 176 (2014) (guilty plea vacated because of ineffective assistance of counsel on another ground); Commonwealth v. Clermy, 421 Mass. 325, 330-331 (1995); Commonwealth v. Lobo, 82 Mass. App. Ct. 803, 806 (2012); Commonwealth v. Benitez, 37 Mass. App. Ct. 722, 724 (1994); Commonwealth v. Rivera, 27 Mass. App. Ct. 41, 42 (1989).

The absence of smoking paraphernalia, in conjunction with other factors, also has been recognized as probative of an intent to distribute. See Little, supra; Wilson, supra; Dessources, supra.

The unusual and complex manner in which the four males, including the defendant, acted and interacted after the suspected sale reasonably could be viewed as evasive measures to avoid detection, including flushing out the possibility of police surveillance. Such evidence, in conjunction with other factors, is probative of an involvement with drugs that is deeper than mere possession of marijuana. See Commonwealth v. Gonzalez, 452 Mass. 142, 144 (2008) ("scurrying" sounds within

apartment); Commonwealth v. Watson, 430 Mass. 725, 728 & n.10 (2000) ("Drug couriers use erratic driving to find out whether they are being followed"); Commonwealth v. Cabrera, 76 Mass. App. Ct. 341, 347 (2010) (automobile maneuvers); Commonwealth v. Dise, 31 Mass. App. Ct. 701, 704-705 (1991) (same).

The fact that no actual exchange was observed by police may weaken the Commonwealth's probable cause showing, but other factors may be sufficient to overcome the absence of such evidence. See Commonwealth v. Kennedy, 426 Mass. 703, 711 (1998). There is no per se rule that precludes arrest unless an actual exchange is observed. Commonwealth v. Levy, 459 Mass. 1010, 1011 (2011). As we said in Commonwealth v. Rivera, 425 Mass. 633, 646 n.13 (1997), "[u]nfortunately drug sales are so common in present society that almost any witness could draw the inference that drug sales were occurring when observing the activities described by [the officer, even without being able to see what was exchanged]."

Probable cause must be determined from the totality of the circumstances. Commonwealth v. Hernandez, 448 Mass. 711, 715 (2007). It is a concept guided by "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 175 (1949). The Commonwealth has made the requisite showing. Evidence that the defendant had thirteen

small baggies of marijuana collected in a larger bag concealed in his groin area, that he had no paraphernalia by which to smoke marijuana, and that he in consort with three other people took complex evasive maneuvers provided sufficient basis on which a clerk-magistrate properly issued a complaint against him for possession of marijuana with the intent to distribute. There was no need to provide a chemical or weight analysis of the marijuana, or an expert opinion as to intent, for purposes of establishing probable cause. Such additional evidence more practically would be obtained and provided as discovery in anticipation of a trial.[1]

Today's decision likely will leave police departments in a quandary as to the extent of an investigation that is necessary to provide a police report that will survive probable cause analysis and be available prior to arraignment on the question of pretrial release, which in many cases is well within twenty-four hours of arrest. This could require calling in officers to work overtime, or require arresting officers to work overtime to enhance their reports, or essentially encourage officers not to

---

[1] The court notes the policy goals of the 2008 ballot initiative and St. 2008, c. 387, "An Act establishing a sensible State marihuana policy." I appreciate those goals but the 2008 enactment did not decriminalize possession with the intent to distribute marijuana, and I do not read this enactment as intending to reject, alter, or affect this court's established jurisprudence concerning a determination of probable cause.

arrest because of insufficient time to prepare a report.  This simply may not be feasible, nor should it be.  The probable cause to arrest standard is a low threshold that anticipates far more work and preparation intended to meet the standard applicable at trial -- proof beyond a reasonable doubt.  The probable cause standard is only the beginning of a far more complex process.  For these reasons I respectfully dissent.