NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-187
22-P-188

COMMONWEALTH

vs.

SAMUEL DENTON (and a companion case[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The Commonwealth appeals from orders of the Boston Municipal Court dismissing two criminal complaints against the defendants, Samuel Denton and Emerson Brandao, for unlawfully carrying a firearm without a license, in violation of G. L. c. 269, § 10 (a), and unlawfully possessing ammunition without a firearms identification card, in violation of G. L. c. 269, § 10 (h) (1).  Concluding that the Commonwealth established probable cause to support both charges, we reverse.

1.  Background.  The relevant portions of the police reports attached to the complaint application allege the following.

_____

[1] Commonwealth vs. Emerson A. Brandao.

At about 10:22 P.M. on January 19, 2021, Boston police responded to a report of a person with a gun at an intersection in Dorchester. The dispatcher informed the officers that the suspect was wearing a white "hoodie" and drove away in a white Range Rover sport utility vehicle (SUV). Dispatch then notified officers of multiple shot spotter activations at two addresses near the same intersection.

Police next received a radio report that a white SUV was seen driving the wrong way down a nearby one-way street at a high rate of speed. An officer in a marked cruiser caught up with the SUV nearby and attempted to stop it by activating the cruiser's lights and sirens, but the SUV did not pull over and continued at an excessive speed. By the time the SUV turned and drove toward Roxbury, more marked cruisers had joined the high-speed chase with their lights and sirens activated. The police followed the SUV as it continued to speed through multiple stop signs and traffic lights and down more one-way streets in the wrong direction, at one point hitting a parked vehicle.

The SUV finally stopped when it was surrounded by police in Roxbury. Officers approached with guns drawn and ordered the defendants out of the SUV. Brandao was removed from the front passenger seat and Denton from the rear passenger seat; both were placed under arrest at about 11:07 P.M. The front passenger-side window of the SUV was completely rolled down, and

2

the rear passenger-side window was rolled down about halfway. Officers then saw and recovered a firearm "a few feet away from the passenger side door," "in between two parked vehicles."  The firearm contained one chambered live round of ammunition and ten live rounds in its fifteen-round magazine.  A CJIS (criminal justice information system) check of the defendants revealed that neither had a license to carry a firearm.  Along the route the SUV had taken, near where the shot spotters were activated, police recovered two .40 caliber bullets, two .40 caliber shell casings, and one nine-millimeter shell casing.

The Commonwealth obtained criminal complaints against each of the defendants, alleging violations of G. L. c. 269, §§ 10 (a) and 10 (h) (1).  The defendants successfully moved to dismiss their respective complaints for lack of probable cause. In a written decision, the motion judge found that the complaint applications contained insufficient indicia that the firearm was thrown from the SUV.  Inferentially, he also found no probable cause to believe that the defendants had any knowledge of the firearm or ammunition.  The Commonwealth then filed these appeals, which we paired.

2. Discussion. A complaint application "must allege facts sufficient to establish probable cause as to each element of the

3

offense charged."[2]  Commonwealth v. Ilya I., 470 Mass. 625, 627 (2015).  What is required is a showing that police "entertained rationally 'more than a suspicion of criminal involvement, something definite and substantial, but not a prima facie case of the commission of a crime, let alone a case beyond a reasonable doubt'" (citation omitted).  Id. at 628.  See Commonwealth v. Clinton, 491 Mass. 756, 775 n.22, 778 n.23, 779 n.24 (2023) (recognizing that Commonwealth's burden at probable cause stage is lower than at trial).  "In dealing with probable cause . . . we deal with probabilities.  These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."  Commonwealth v. Humberto H., 466 Mass. 562, 566 (2013), quoting Brinegar v. United States, 338 U.S. 160, 175 (1949).  We review issues of probable cause de novo, looking only to the four corners of the complaint application and viewing the allegations in the light most favorable to the Commonwealth.  See Ilya I., supra at 626 n.1, 627.

---

[2] While these appeals were pending, the Supreme Judicial Court decided that failure to comply with applicable licensure requirements is an essential element of crimes under § 10 (a) and § 10 (h) (1).  See Commonwealth v. Guardado, 491 Mass. 666, 690-692 (2023).  As this issue understandably was not addressed in the trial court, and as the parties have not briefed it on appeal, our conclusion that the complaint applications here established probable cause is without prejudice to any further proceedings in the trial court regarding the licensure issue.

4

A complaint alleging a violation of § 10 (a) or § 10 (h) (1) must demonstrate probable cause to believe that the defendant knowingly possessed a firearm or ammunition, respectively. See Commonwealth v. Johnson, 461 Mass. 44, 52-53 (2011); Commonwealth v. White, 452 Mass. 133, 136 (2008). Where a defendant is not in actual possession of the contraband at the time of arrest, the Commonwealth may rely on circumstantial evidence and reasonable inferences to show constructive possession. See Commonwealth v. Sespedes, 442 Mass. 95, 99 (2004). Constructive possession requires "knowledge coupled with the ability and intention to exercise dominion and control." Id., quoting Commonwealth v. Brzezinski, 405 Mass. 401, 409 (1989). "The defendant's mere presence in the area where contraband is found is insufficient to show the requisite knowledge, power, or intention to exercise control over the [contraband], but presence, supplemented by other incriminating evidence[,] will serve to tip the scale in favor of sufficiency" (quotations and citation omitted). Commonwealth v. Schmieder, 58 Mass. App. Ct. 300, 303 (2003). Finally, "[p]ossession need not be exclusive. It may be joint and constructive." Commonwealth v. Beverly, 389 Mass. 866, 870 (1983).

Based on the police reports attached to the complaint application, we conclude that there was probable cause to believe that the loaded firearm discovered outside the SUV was

jointly and constructively possessed by the defendants in the SUV before their arrests.[3]

First, the Commonwealth met its burden to show probable cause that the firearm containing ammunition was discarded from the SUV. The SUV in which the defendants were discovered matched the description of the vehicle in which a person with a gun had driven less than one hour earlier when the chase began, shot spotters were activated along the vehicle's route, and shell casings and bullets were found on the street along the route taken by the SUV. And, once police gained sight of the SUV -- mere minutes after and blocks away from the initial sighting of the person with a gun -- the SUV initiated a high-speed police chase, during which police did not lose sight of it before it was stopped. Finally, the firearm was discovered only a few feet from the SUV's passenger-side doors, which both had open windows, in a location permitting an inference that someone in the trapped SUV tried to hide it from view. These facts provide probable cause to believe that the SUV was the same one in which a person was known to be carrying a firearm less than one hour earlier and that the driver, at least, was exhibiting

---

[3] Probable cause for the ammunition charge could also have been predicated on the ammunition found strewn along the route taken by the SUV. But, where we determine that there was, in any event, probable cause for that charge based on the ammunition in the firearm, we need not further analyze that alternative scenario.

consciousness of guilt consistent with the presence of an illegal loaded firearm in the vehicle.[4]

The absence of certain indicia suggesting that the firearm was thrown from a moving vehicle, such as were present in Commonwealth v. Jefferson, 461 Mass. 821, 826-827 (2012),[5] does not undermine our determination that, in this case, there was probable cause to believe the firearm originated from the stopped SUV. Our inquiry is not limited to the evidence considered in Jefferson; instead, those factors "must be considered with other evidence that reasonably permitted the inference that the defendants had thrown some type of contraband from the vehicle." Id. at 826. Here the police report permitted a reasonable inference that the firearm was deliberately disposed of from a stationary vehicle in a surreptitious manner, rather than thrown haphazardly out the

---

[4] The driver of the SUV, who is not a party to this appeal, was wearing a white hoodie when he, too, was arrested at the scene, lending further support to the Commonwealth's allegation that the firearm originated from the SUV.

[5] In Jefferson, 461 Mass. at 826-827, there was sufficient evidence to convict the defendants of possessing a firearm found on the ground along the route their vehicle took during a chase ending in their arrest. The evidence included the position of the firearm in plain view on the sidewalk, suggesting that it had not been there long; the broken pieces of the firearm, suggesting that it had been thrown from the moving vehicle and landed with force; and its location, which was consistent with having been thrown from the open passenger-side window during the time when police lost sight of the vehicle.

window of a moving vehicle as in Jefferson. Thus, that the firearm here was not noted to be damaged, as it was in Jefferson, supra at 824, and was found between two parked cars, rather than in the middle of a paved walkway as in Jefferson, supra, does not negate probable cause here.

Similarly, that the police report here does not indicate that police lost sight of the vehicle, as they briefly did in Jefferson, 461 Mass. at 823-824, does not negate the inference here that the firearm was discarded from the SUV once it stopped. We do not read the police report, despite its reference to the SUV having "finally stopped due to being surrounded by . . . marked cruisers," to mean that police could see the stopped SUV from every angle. The report states that the firearm was found "a few feet away from the passenger side door," "in between two parked vehicles." That the passenger side of the SUV was only a few feet away from two parked vehicles permits a reasonable inference that police, while still in their cruisers, were not able to see the passenger side of the SUV because it was stopped close to the two other vehicles and that the defendants discarded the firearm at that time.

Second, although "[i]t is not enough to place the defendant and the weapon in the same car" (citation omitted), Commonwealth v. Albano, 373 Mass. 132, 134 (1977), the Commonwealth has also shown probable cause to believe that either or both of the

defendants had the requisite knowledge, power, and intention to control the firearm and the ammunition inside. The fact that the defendants were discovered in the SUV not long after shots were fired from it, and at the conclusion of a high-speed chase during which they could not have entered the SUV, permits inferences that the defendants were in the SUV from the start, that they witnessed the person in the white hoodie enter the SUV with the gun and then fire it, and thus that they knew there was a loaded firearm in the SUV. Cf. Commonwealth v. Romero, 464 Mass. 648, 653 (2013) (sufficient evidence of driver's knowledge of firearm where front seat passenger was openly handling it in driver's plain view).

As for the power and intent to exercise control, the fact that the firearm with the ammunition was found just outside the passenger side of the SUV permits an inference that it was placed there by the defendants, who were seated in the front and rear passenger seats. "[A]ttempts to conceal or dispose of contraband . . . permit an inference of unlawful possession." Commonwealth v. Whitlock, 39 Mass. App. Ct. 514, 519 (1995). See Jefferson, 461 Mass. at 826-827 (sufficient evidence of driver's and passenger's intent to control where driver initiated chase with intent to dispose of firearm and passenger threw it out car window); Commonwealth v. Cotto, 69 Mass. App. Ct. 589, 594 (2007) (sufficient evidence of possession where

9

"the gun was found directly under the front passenger seat where the defendant had been seen shoving his feet").  Compare <u>Romero</u>, 464 Mass. at 658 (no intent to control where "defendant made no attempt to evade [police] or . . . to dispose of the weapon).

<u>Orders dismissing complaints reversed</u>.

By the Court (Neyman, Sacks & Hodgens, JJ.[6]),

*Joseph F. Stanton*

Clerk

Entered: July 19, 2023.

---

[6] The panelists are listed in order of seniority.