APPEALS COURT 
 
 COMMONWEALTH vs. DAVID W. HOWARD

 
 Docket:
 24-P-1128
 
 
 Dates:
 September 10, 2025 – November 13, 2025
 
 
 Present:
 Neyman, Ditkoff, & Englander, JJ.
 
 
 County:
 Essex
 

 
 Keywords:
 Assault by Means of a Dangerous Weapon. Firearms. Constitutional Law, Right to bear arms. Probable Cause. Reasonable Doubt. Constable. Practice, Criminal, Dismissal, Required finding, Instructions to jury.
 
 

  
      Complaint received and sworn to in the Lawrence Division of the District Court Department on September 21, 2022.
      A motion to dismiss was heard by Holly V. Broadbent, J., and the case was tried before Pacifico M. Decapua, Jr., J.
      Robert H. D'Auria for the defendant.
      Zachary D. Grube, Assistant District Attorney (Jessica Schae Fleet, Assistant District Attorney, also present) for the Commonwealth.
      ENGLANDER, J.  The defendant was convicted of assault by means of a dangerous weapon, arising out of a confrontation at the front door of his home.  The victim, a constable, approached the defendant and attempted to serve him with papers relating to a divorce proceeding.  The defendant responded angrily, and thereafter left the doorway, obtained a rifle that he kept in the home, and returned to the doorway, holding the rifle so that it pointed straight up.  The victim, who by that time was returning to his parked car in the driveway, witnessed the defendant holding the rifle, and called the police.
      Based upon the above, the defendant was convicted after a trial by jury.  On appeal, the defendant argues (1) that the evidence was insufficient to charge and to convict him of assault, (2) that his actions with the rifle were protected by the Second Amendment to the United States Constitution, and thus that the conviction cannot stand, and (3) that the judge erred when he declined to give instructions, requested by the defendant, that purported to describe for the jury the defendant's Second Amendment rights.
      In the particular factual circumstances here, we conclude that the conviction must be affirmed.  Where the defendant left the doorway and returned with a rifle, there was sufficient evidence from which a reasonable jury could conclude that the elements of assault were met, including that a reasonable person in the shoes of the victim could have believed that the defendant threatened him with an immediate battery.  Moreover, under the circumstances the defendant had no Second Amendment right to fetch and to exhibit the rifle as he did.  On this record, the victim was not threatening the defendant and the victim had come on the premises lawfully; the defendant had no legal right to threaten the victim with imminent harm.  
      Background.  On the morning of September 21, 2022, the victim drove to the defendant's home in Andover.  The victim is a constable, and his goal was to serve the defendant with legal papers regarding a divorce proceeding.  The victim parked in the defendant's driveway, facing the street.  He then walked to the front door and knocked on it loudly, several times.  He received no response, and thereafter, he also may have knocked on the defendant's windows.
      The victim began to walk back to his car, but when he was part way there, the defendant opened the front door.  The two had a brief conversation.  The defendant asked the victim what he wanted, and the victim asked the defendant if he was David Howard, and stated that he had legal papers for Howard.  The defendant responded that the victim should "tell my f'ing ex-wife's lawyer" where to go.  The victim approached the defendant on the front step and attempted to hand him an envelope with the papers, but the defendant would not accept it.  The victim then tossed the envelope at the defendant's feet (which the victim considered to be proper service).
      The victim turned around and walked back to his car.  As the victim was walking, he saw the service envelope "fly by," and so he turned again to look at the front door.  The victim saw the defendant in the doorway, "holding a rifle."  The defendant was holding the rifle with both hands, so that it pointed straight up.  The rifle was not pointed at the victim.  The victim testified that he was upset and nervous, because the rifle "could be pointed at me at any time."  The victim got in his car and called the police.
      The defendant was charged with one count of assault by means of a dangerous weapon.  Prior to trial, the defendant filed a motion to dismiss the charge for lack of probable cause, arguing that the police report attached to the application for a complaint did not establish an assault.  A judge denied the motion, and the case was then tried before a jury.  At trial, the victim testified to the above facts.  At the close of the evidence, the defendant moved for a required finding of not guilty.  The defendant argued (1) that there was insufficient evidence that the defendant had committed an assault, and (2) that the defendant's actions were protected by the Second Amendment.  Alternatively, the defendant requested two jury instructions that purported to address his Second Amendment rights, one of which stated, in part, that "[a] person has a right under the Second Amendment to the United States Constitution to possess and carry weapons in case of confrontation . . . ."[1]  The trial judge denied the motion for a required finding, and did not give either proposed jury instruction.  The jury found the defendant guilty, and he now appeals.
      Discussion.  1.  Sufficiency of the evidence as to probable cause.  Turning first to whether the application for a criminal complaint established probable cause to charge the defendant, our case law allows a defendant to raise such a challenge, even after trial.  See Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982).  The probable cause bar is not a high one, however.  It is far less than the trial standard of beyond a reasonable doubt -- less even, than a preponderance of the evidence.  See Commonwealth v. Preston P., 483 Mass. 759, 774 (2020) ("proof by a preponderance of evidence" is "a higher standard than probable cause").  "Probable cause is that amount of information that would warrant a prudent person in believing that the defendant committed the crime."  Commonwealth v. Stoico, 45 Mass. App. Ct. 559, 565 (1998).  On appeal, we review the information submitted to the clerk-magistrate in the light most favorable to the Commonwealth, drawing all reasonable inferences in the Commonwealth's favor.  See Commonwealth v. Geordi G., 94 Mass. App. Ct. 82, 85 (2018).
      The Commonwealth in this case proceeded on the theory that the defendant committed the type of assault known as assault by immediately threatened battery, the elements of which are (1) that the defendant intended to put the victim in fear of an immediate battery and (2) that the defendant engaged in some conduct toward the victim which the victim reasonably perceived as immediately threatening a battery.  See Commonwealth v. Porro, 458 Mass. 526, 530-531 (2010).  Here the Commonwealth's application for a criminal complaint attached the police report regarding the incident, so the police report is the evidence we review for probable cause.  Commonwealth v. Ilya I., 470 Mass. 625, 626 (2015) ("Our review . . . is confined to the four corners of the application for complaint, which in this case is essentially the police incident report").  The police report set forth essentially the same operative facts to which the victim testified at trial.  The defendant contends that the facts in the police report did not support probable cause as to the element of intent -- that is, they did not support a conclusion that the defendant intended to put the victim in fear of an immediate battery.  The defendant labels the Commonwealth's contention as to intent "sheerly speculative," and argues that "the mere display of a firearm by Howard in the doorway of his own home, without more, is insufficient to establish probable cause to believe he intended to use the firearm . . . ."
      The error in the defendant's argument is his characterization of his conduct as the "mere display" of a firearm, "without more."  Here there was "more."  When the defendant first confronted the victim, he did not have the rifle.  He was angry, and expressed that he was angry with the people responsible for the legal papers that the victim was attempting to serve.  In this angry state, he went and retrieved the gun, and displayed it to the victim after getting the victim's attention by throwing the service envelope at him.  These facts established probable cause that the defendant, at that moment, intended to put the victim in fear that he might imminently use the rifle he had just retrieved.  See Porro, 458 Mass. 526 at 531 ("it is sufficient that a defendant engages in menacing conduct that would place a reasonable person in fear").  Moreover, as to the second element of immediately threatened battery, we are more than satisfied that a reasonable person, under the circumstances, could have perceived the defendant's actions as an immediate threat to use the rifle.  The motion to dismiss was properly denied.
      2.  Sufficiency of the evidence at trial.  The evidence at trial was also sufficient to establish assault by means of a dangerous weapon.  Of course, the standard of proof at trial, beyond a reasonable doubt, is much higher than the standard of proof necessary to overcome a motion to dismiss.  Nevertheless, when considering the sufficiency of the evidence after trial, our appellate standard of review is appropriately deferential to the jury's verdict.  Under Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), we ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis omitted; citation omitted).
      We have no difficulty concluding that the Latimore standard is satisfied on the facts of this case.  The defendant again argues that the "mere display" of a firearm while standing on the threshold of one's home, "without more," cannot constitute an assault.  As before, we reject the defendant's characterization of the facts, because as noted above, here there was "more."  After the confrontation with the victim had begun, the defendant intentionally acted to fetch his firearm, and to hold the firearm so that he could use the firearm imminently, and so the victim would reasonably perceive that it could be used imminently.  Those facts satisfy the elements of assault by immediately threatened battery, and a jury could (and did) so find.  See Commonwealth v. Henson, 357 Mass. 686, 693 (1970) ("It is sufficient to prove such a charge if the evidence shows an apparent ability to accomplish the battery by means of the particular weapon used").  See also Porro, 458 Mass. 526 at 531.
      3.  The Second Amendment issues.  The defendant next argues that he had a "Second Amendment right to possess a firearm in his own home," and that in this case, the Commonwealth has "criminaliz[ed]" his protected conduct.  It is true that the defendant had a Second Amendment right to possess the rifle in his own home -- provided he was properly licensed.[2]  See District of Columbia v. Heller, 554 U.S. 570, 626-627 (2008); New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1, 15 n.2 (2022).  As discussed above, however, the facts here do not present a case of mere possession.  Rather, a jury could have reasonably found that the defendant intentionally employed his rifle to threaten the victim with immediate harm.
      Under the circumstances, the application of the Commonwealth's criminal laws did not infringe on the Second Amendment.  At the outset, it is important to recognize that the defendant is not claiming merely a Second Amendment right to possess and carry a rifle, but also a right to use it as he did here -- that is, the defendant's argument necessarily posits a Second Amendment right to use a firearm to threaten a person standing on one's property.  And in addressing that argument, we note that there is a serious question as to whether the Second Amendment provides any protection to how one uses a gun, as opposed to protecting the possession and carrying of a gun.  Cf. Calderone v. Chicago, 979 F.3d 1156, 1162 (7th Cir. 2020) (noting lack of cases addressing how Second Amendment might protect use of firearm, as opposed to its carriage).
      For reasons discussed below, however, we need not decide whether the Second Amendment protects certain uses of a weapon, because even if it does, it did not protect the defendant's use of his weapon under the facts here.  We are cognizant that in Heller, the Supreme Court construed the term "bear arms" as meaning to "carry weapons in case of confrontation."  554 U.S. at 592.  However, we do not understand the words "in case of confrontation" as answering the question whether the Second Amendment protects particular uses of weapons, because the Court surely did not mean to suggest a constitutional right to use a firearm in any "confrontation" -- for example, to threaten persons as a result of a verbal altercation, or even to shoot them.  Indeed, the Heller Court so stated:
"Like most rights, the right secured by the Second Amendment is not unlimited. . . .  [It is] . . . not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."  
Id. at 626.  Rather, if the Second Amendment protects any use of a weapon (as opposed to its possession or carriage), the protection must be much more limited, and confined to the particular purposes that the Supreme Court has recognized in its cases -- in general, to protect one's person, or perhaps one's home.  See id. at 585; Bruen, 597 U.S. at 8-9.
      Here the use the defendant put to his rifle gains no Second Amendment protection.  First, the defendant does not argue that he fetched the gun because he felt threatened by the victim; there is no argument before us that he retrieved the gun for self-defense.[3]  And second, we think it relevant that the evidence indicates that the victim was lawfully on the premises.  The victim parked in the driveway and walked to the front door.  There is no evidence that any notice had been given, either directly to the victim or by posting, that unauthorized persons could not enter the property.  The victim was in law an implied licensee; there is thus no suggestion that the victim was trespassing.[4]  See Commonwealth v. Leslie, 477 Mass. 48, 57 (2017); Commonwealth v. Hood, 389 Mass. 581, 590 (1983); Commonwealth v. Richardson, 313 Mass. 632, 637-638 (1943).  Whether or not the Second Amendment encompasses some limited right to use a firearm that one possesses (which we do not today decide), the Second Amendment does not provide a right to intentionally threaten a person who is lawfully on one's premises, where there is no basis to conclude that the act of threatening is for reasonable self-defense.
      In his brief, the defendant also invokes G. L. c. 140, § 131L (§ 131L), a statute that requires, in essence, that firearms be maintained in locked storage -- unless they are being carried by or under the immediate control of the owner.  Although the defendant's argument regarding this statute is not easily followed, we understand the gist of the argument to be that the defendant was somehow required by § 131L to have the rifle with him at the door.  Suffice it to say that we do not so read that statute; the statute is primarily concerned with storing firearms, and consistent with the statute, the defendant could have left his firearm in storage, rather than retrieving it to confront the victim.  Indeed, the defendant did not have the firearm with him when he first came to the door.  There is thus nothing about § 131L that suggests that it somehow compelled the defendant to be carrying the rifle at the time in question.
      4.  The jury instructions.  Finally, the defendant argues that the judge erred when he declined to give two jury instructions proposed by the defendant, one that purported to advise the jury regarding the defendant's Second Amendment rights, and the other that addressed the storage statute discussed above.  In particular, the defendant proposed that the judge instruct that:
"[A] person has a right under the Second Amendment to the United States Constitution to possess and carry weapons in case of confrontation, and this means that persons have a Second Amendment guarantee to possess and carry firearms either in their home or publicly in case of confrontation."
The judge declined to so instruct the jury, noting that "the simplicity of [the defendant] possessing [the firearm] or carrying it isn't something that I'm going to ask them to consider.  It's how he used it."
      We review for whether the judge erred in declining the instruction, and if so, whether the error was prejudicial. Commonwealth v. Cruz, 445 Mass. 589, 591 (2005).  As we said in Commonwealth v. Adams, 34 Mass. App. Ct. 516, 519 (1993):
"[T]he failure to give a requested jury instruction is reversible error only if the requested instruction is (1) substantially correct, (2) was not substantially covered in the charge given to the jury, and (3) concerns an important point in the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a given defense" (emphasis omitted and citation omitted).
Within the above parameters, a judge has considerable discretion in how to formulate the instructions to the jury.  See Commonwealth v. Toolan, 490 Mass. 698, 708 (2022) ("Judges have broad discretion in framing jury instructions, including determining the appropriate degree of elaboration"). 
      Here we perceive no error in declining to give the proposed instruction quoted above.  That proposed instruction is at best incomplete, and therefore of questionable accuracy, because the Second Amendment right to possess a firearm is not absolute, but instead is qualified -- for example, by the need to be licensed by the Commonwealth.  See Bruen, 597 U.S. at 21; Heller, 554 U.S. at 626.
      But we need not dwell on the instruction's questionable accuracy, because in any event the judge was correct that, given the facts of this case, the instruction did not address a central or "important point."  See Adams, 34 Mass. App. Ct. at 519.  As discussed above, the defendant's conduct in threatening the victim with a rifle was not protected by the Second Amendment -- at least where, as here, self-defense was not in issue and the victim was lawfully on the premises.  The judge did not err in declining to instruct regarding a constitutional right that was not implicated by the facts of the case.  Indeed, here the proposed instruction had the potential to confuse the jury, rather than to advise it.[5],[6]
                                          
 
Judgment affirmed.
footnotes

      [1] The second proposed instruction related to a Massachusetts statute, G. L. c. 140, § 131L, regarding the obligation either to properly store one's firearm, or to keep it under one's control.
      [2] There is a suggestion in the record that the defendant was properly licensed.  Assuming such is true, that fact is not material to our decision, for the reasons discussed infra.
          [3] At trial, the defendant made an oral motion to have the jury instructed as to self-defense, but the judge declined.  Under the facts of this case, the defendant was not entitled to have the jury so instructed, as a matter of law.  See Commonwealth v. Galvin, 56 Mass. App. Ct. 698, 701 (2002).  The defendant does not raise the judge's declining to give such an instruction as an issue for appeal.
               [4] G. L. c. 266, § 120, provides that "[w]hoever, without right enters or remains in or upon . . . improved or enclosed land . . . of another . . . after having been forbidden so to do . . . whether directly or by notice posted thereon, . . . shall be punished . . . ."
      [5] We do not rule out the possibility that on different facts, the Second Amendment might be a relevant defense to an assault charge, nor do we rule out the possibility that the jury might need to be instructed as to the Second Amendment rights.  Those are questions for another day.
      [6] For reasons already expressed, the defendant's other proposed jury instruction, regarding G. L. c. 140, § 131L, was irrelevant to the facts at issue, and properly rejected.